## BALES & LEARN v. NEW AMSTERDAM CASUALTY CO.

Eastern Section.    May 10, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

1. **Insurance. Liability insurance. Insured held entitled to recover money expended for first aid treatment.**
Under a policy of liability insurance which provided that the assured might provide, "at the time of the accident and at the cost of the company such immediate surgical relief as is imperative," held that assured was entitled to recover for such money expended.

2. **Words and phrases. The word "immediate" as used in insurance contract is of relative signification.**
The word 'immediate' is of relative signification. It is never employed to designate an exact portion of time. It is used with more or less latitude by universal consent, according to the subject to which it is applied.

3. **Insurance. First aid relief defined.**
In an action on a liability insurance policy which provided that the assured might provide such immediate surgical relief as is imperative where the evidence showed that the party was injured in the evening and it was necessary to take her to a hospital in an ambulance and that her relatives could not be notified until the next day held that under this clause the assured was entitled to recover for the expenses of the ambulance, the doctors and nurses making the examination and hospital expenses until the time that the patient's family could be notified and reach her.

4. **Appeal and error. Where amount plaintiff is entitled to recover can not be ascertained from the evidence the case will be remanded for a reference.**
In an action to recover from an insurance company for money expended to care for a party injured in an accident where the evidence showed that the plaintiff was entitled to recover for first aid relief only and it could not be determined from the evidence how much was expended for first aid relief, held that the case should be remanded for a reference to determine the amount plaintiff was entitled to recover.

Appeal from Chancery Court, of Knox County; Hon. Robert Jones, Chancellor.

Reversed and remanded.

Clarence A. Bales, of Knoxville, for appellant.

Lee, Price, McDermott & Meek, of Knoxville, for appellee.

OWEN, J.    Complainants have appealed from the decree of the Chancellor dismissing their bill and refusing them any relief.

On September 18, 1924, R. C. Bales and W. A. Learn, citizens of Knox county, and partners, filed a bill against the defendants, which is a corporation, with its principal office in Baltimore, Maryland. It was alleged that the defendant had an agent and office in Knoxville, Tennessee. During the year 1922 complainants were engaged in

operating a line of busses from Knoxville to Maryville, Tennessee. Complainants procured an insurance policy from the defendant company on the 7th of September, 1922, for a term of one year. Complainants paid a premium for this insurance, and the policy, among other things, was to indemnify the complainants for any damages from the operations of either or all of their busses, and to defend any and all suits, whether groundless or not, growing out of any injuries arising from the operation of the busses, to pay all expenses in defending such suits, and all court costs, and any judgments against the complainants up to the sum of $5000, for any one person injured, or $10,000 if more than one person was injured. The policy also contained a provision that the defendant would pay for any expense incurred by the complainants for immediate surgical relief which might be rendered to any injured person. It was insisted by complainants in their bill that by this provision, if the complainant should injure any person and should take immediate steps to give the injured person such medical attention as the case demanded, the defendant would pay therefor.

It further appears that late in the afternoon of October 11, 1922, while this policy was in force, one of the busses operated by complainants struck, knocked down and seriously injured a woman by the name of Mrs. Glennie Daily. Mrs. Daily was seriously injured, being rendered unconscious. Complainants procured an ambulance, sent Mrs. Daily to the Riverside Hospital in Knoxville, Tennessee, where she was placed under the care of physicians and nurses, a nurse being required to look after Mrs. Daily during the day and another nurse during the night. Mrs. Daily remained in the hospital about three months. She was unconscious for more than fifty days. It appears that Mrs. Daily had a husband and mother who lived near Maryville. They were notified probably the next day. Some of Mrs. Daily's relatives came to the hospital the first or second day after the accident, but it was alleged that these relatives did not take care of Mrs. Daily, and it appears that complainants agreed to pay the doctors, nurses and hospital charges. They evidently committed themselves in some way to pay these accounts, for they were sued in the justice of the peace court for these items of expense. Complainants resisted the accounts, but were unsuccessful both before the Justice of the Peace and in the circuit court. They appealed to the Court of Civil Appeals. The causes were affirmed. It appears that no assignments of error were filed. During the time that Mrs. Daily was in the hospital complainants notified I. M. Deaver, agent of the defendant, and also the attorney's for the defendant, that they expected defendant to pay these bills. It appears that the complainants paid to the hospital, the doctors and nurses $990.63. They also paid attorney, Mr. C. A. Bales, $200 for defending them in the suits

brought by the doctors, nurses and hospital, and they paid about $100 court costs. It was insisted in complainant's bill that these items paid by complainants were incurred by complainants in an honest effort to minimize the damages from the accident for the benefit of the defendant and in accordance with what they understood to be the requirements of the policy. That the Insurance Company had full knowledge through its agents and attorneys of all that was done and complainants were allowed and encouraged to give the injured woman the best of care, and were made to believe that it was their duty to do so under the contract; and it was insisted that the defendant was estopped from denying liability.

After Mrs. Daily recovered sufficiently to be removed from the hospital she, by next friend, instituted a suit against complainants in the circuit court of Knox county for $2,500 damages. She recovered a judgment for $3000. It appears that the attorneys for the defendant in the instant case defended the damage suit; likewise, complainants personal attorney, Mr. C. A. Bales, defended, as there was some apprehension that a judgment might be rendered for more than $5000.

When attorneys for Mrs. Daily and for the defendant Insurance Company agreed on a judgment for $3000, complainants through their attorney objected to the settlement unless his clients, the complainants in the instant case, were paid or reimbursed for the amount that they had paid to the doctors and nurses, and for hospital expenses, etc. The defendant refused to adhere to this request, and paid in to the clerk the sum of $3000 for Mrs. Daily, and paid the cost and paid their attorneys Lee, Price & Meek for defending the damage suit. Mrs. Daily did not reimburse complainants, and hence this suit.

Complainants have assigned six errors in this court. All of said assignments will be considered together.

Complainants insist that they brought this suit on four theories, either of which should entitled them to a recovery. Their theories are in substance as follows:

The first theory on which complainants sue, is that under a fair interpretation of the policy itself, they are entitled to recover the amount paid out. Like other policies it first insures the parties against all liabilities, and then attempts to take away much of that protection by restrictions placed therein. The material restriction in controversy here is known as condition "D" which is as follows: "The assured shall not voluntarily assume any liability nor incur any expense or settle any claim unless such settlement or expenditure is first authorized in writing by the company, except that the assured may provide at the time of the accident and at the cost of the company such immediate surgical relief as is imperative."

Complainants insist that, owing to the peculiar circumstances of this case, all of these expenses are recoverable under that condition, because the woman was rendered unconscious by the collision, and remained so for eight weeks, during which time the entire amount of these expenses was incurred. She was never conscious, and unable to make arrangements for her own care, and her family refused to take charge of her, or provide for her.

Complainants' second theory is that the defendant, through its agents and attorneys, mislead them into believing that they would pay the bills when the suit was settled, and thereby induced the complainants to continue to have the woman cared for. The complainants at first believed that that was their duty under the policy, and so repeatedly notified the defendant, and defendant's acts and conduct created an estoppel.

Complainants under their third theory insist that it was their duty under the policy of insurance to give the woman treatment until she could become conscious, and make arrangements for herself, or until her family would do so. If they had not done this, the Insurance Company undoubtedly would have complained because the policy agreed to pay for such treatment, and good faith on their part required them to do everything reasonable to minimize the damage.

Complainants' fourth theory is that, they believe they are entitled to recover because the woman, if she had paid the doctors, and the hospital and nurses' bills, was entitled to include these in her recovery. Bales and Learn having paid them for her, were entitled to deduct them from her claim of damages as a partial payment.

We are of opinion that the complainants are entitled to recover for such expenses as they paid out for immediate surgical relief. The defendant does not deny its liability on this item. The contract of insurance does not indicate where first aid or immediate surgical relief ends and subsequent treatment begins. We are of opinion that first aid or immediate surgical relief can not be confined to minutes, hours, or even days; neither can it be absolutely fixed in dollars and cents. It should be some reasonable amount and rendered within a reasonable time. We do not think that first aid treatment would extend over a period of a week or a month and neither would first aid treatment be equal to $990. Learned counsel for the defendant state that they can see how a $5 charge might be reasonable for first aid in one case, while in another case $100 might be necessary, depending upon the circumstances and the severity of the injury. We think that this is a sound proposition.

We find, as a fact that the attorneys for the defendant never undertook to bind the defendant to pay any of these items of expenses which complainant incurred. The contract of insurance provides:

"No condition or provision of this policy shall be waived or altered by anyone, unless by indorsement hereon signed by the President, Vice-President or Secretary of the company, nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person be held to effect a waiver or change in this contract or any part of it."

Some weeks after Mrs. Daily was injured, complainants called upon the attorneys for the defendant Insurance Company and the attorneys wrote the Insurance Company· on the 13th of November, 1922, advising the defendant as to complainant's claims. The defendant replied on November 18th, as follows:

"Our experience has convinced us that it is never wise to guarantee expenses in advance. In the first place it is likely to be construed as an admission of liability.

"Of course assured has no right to assume any responsibility so as to prejudice our position. The furtherest we should be willing to have you go would be to suggest to the attending physician and others concerned that if we negotiate a settlement we will endeavor without making any binding agreement to do so, to see that their accounts are taken care of."

Complainants were advised as to the contents of this letter from the defendant upon its receipt, and they were advised within a very short time after the injury that the defendant would not be responsible or incur any expense for doctors, nurse or hospital. In other words, the defendant refused to admit any liability until a judgment was rendered in the circuit court. The contract of insurance provided that the company could employ its own attorneys and could make any settlement with the injured party up to the face of the policy. After the judgment was rendered, the complainants did not take any steps to have themselves reinbursed for these expenses they had incurred on behalf of the injured party, who was the plaintiff is the damage suit.

Assignments 1 and 2 are sustained in part. We are of opinion that the complainants are entitled to recover for expenses incurred for immediate surgical relief, which was imperative. The woman was knocked down, rendered unconscious, and an ambulance was called and she was rushed to the hospital. It was about dark when she arrived at the hospital. Her people could not reach her until the next day. The law doesn't recognize fractions of days, and we are of opinion that the services rendered on the 11th, 12th and 13th of October in behalf of the injured party was first aid service, and that the Chancellor should have so held.

Counsel for complainant has furnished us with a number of opinions published by the West Publishing Company in its reporter system. We have examined these cases and we cite the case of Kelly

v. Maryland Casualty Company from the Supreme Court of Minnesota, decided May 22, 1903, and reported in Northwestern Reporter, Vol 94 at page 889. The Supreme Court of Minnesota had under consideration a policy of-insurance practically the same as the one sued on in the instant case, and it was held that the insured was constituted the agent of the insurer for the purpose of calling medical attendance in cases of emergency, and the liability incurred was independent of the obligations otherwise provided in the policy. It was said, it would be to appellants advantage to provide direct authority, to immediately call a physician in order that by immediate medical attention the amount of liability might be decreased. From this point of view, the provisions for quick surgical relief may be treated as independent express authority conferred upon the insured for that purpose, and the liability thus assumed is not strictly in the nature of indemnity.

The Chancellor dismissed complainant's bill because the immediate expense, or first aid expense, or that which was imperative was not separated from the account. It appears that Dr. Miller, the attending physician, presented a claim of $142.75; the nurses, $223.10; the hospital, $368.70, and other doctors for consultations brought the bill up to $990.63, for fifty-four days. This was $18.35 per day.

It appears that when the bill reached $600, which was thirty-three days after the accident, and complainants visited counsel for defendant, the average expense at that time was $18.18 per day, but we are unable to say that the first day or the first two days or three days the expense incurred for first aid would be equal to about $18 per day.

The contract states that the defendant would be liable for bills incurred which were for "immediate surgical relief that was imperative." "Immediate" means directly related: next: acting without any agency. "Imperative" means not to be avoided: urgent. An imperative necessity is one that cannot be avoided. The word "immediate" is defined by the Standard Dictionary as "following without the lapse of any appreciable time; done or occurring at once; instant: as, an immediate reply." Streeter v. Streeter, 43 Ill., 155-165. The author of the dictionary cited adds to the definition the following: "Even 'immediate' is sliding from its instantaneousness, so that we are fain to substitute 'at once,' 'instantly,' etc., when we would make promptness emphatic." In Anderson's Law Dictionary it is defined as "direct; present; near in time or kinship." In Webster as "not separated in respect to place by anything intervening; close as immediate conduct; not destroyed by an interval of time; the present instant." "Immediate amputation means, in surgery, an amputation performed a few hours after the injury." It is said to be "a word of no very definite signification, and is much in subjection to its gram-

matical connections." Howell v. Gaddis, 31 N. J. Law, 313-316. "The word 'immediate' is of relative signification. It is never employed to designate an exact portion of time. It is used with more or less latitude by universal consent, according to the subject to which it is applied." McLure v. Colclough, 17 Ala. 89-100; Pennsylvania Co. v. State, 142 Ind. 428, 41 N. E. 937. "The word 'immediate'. has had a defined and recognized legal meaning for over two centuries. The word 'immediately,' although, in strictness, it excludes all mean times, yet, to make good deeds and intent of parties, it shall be construed such convenient time as is reasonable requisite for doing the thing." Richardson v. End, 43 Wis. 318. Where the same word was twice used in one clause of a contract, it ought to be construed, so far as the subject-matter permits, as having the same meaning in both places. In no class of cases has the word been so liberally extended in meaning as in those upon insurance policies, requiring immediate notice of loss. A well-defined distinction exists between two classes of conditions found in insurance policies. Those which operate upon the parties prior to the loss are regarded as matters of substance, upon which the liability of the insurer depends, and are to receive a fair construction according to the intention of the parties, while, as to those prescribing formal requisites by which the previously vested right is made available, a rigid construction is not allowed. Solomon v. Insurance Co. 160 N. Y. 595, 55 N. E., 279, 46 L. R. A. 682, 73 Am. St. Rep. 707.

The reasonable imperative relief immediately rendered in our opinion (and we so hold) would include the expense of an ambulance to take Mrs. Daily to the hospital; the calling of the surgeon or physician for examination, and if more than one physician was called in consultation that would be immediate and imperative; and the expenses of the hospital until the woman's relatives could be notified and the Insurance Company could be notified.

We find under the facts of this case, and so hold, that all of the charges for relief rendered to the injured woman from the time her injuries were sustained, which was about 6:00 o'clock on October 11th, until the evening of October 13th, would be proper charges against the defendants. That would include the bills for the ambulance, any X-Rays made to ascertain the patient's injuries, the bills of the surgeons and nurses, and the charge per day by the hospital for the first forty-eight hours after the patient was received. Not being able to definitely fix the amount of defendant's liability, and finding that the defendant is liable for some amount, and the Chancellor in our opinion should have ordered a reference to the Clerk and Master to ascertain and report the amount of expenses incurred for immediate surgical relief and such relief as was imperative, to this extent the judgment of the lower court is reversed and the cause

will be remanded to the chancery court of Knox county for the purpose of ordering a reference and ascertaining the amount due the complainants on the basis as herein stated. To this extent complainant's bill is sustained.

The cost of the lower court will be paid as decreed by the Chancellor; the cost of the appeal will be paid by the defendant. Execution will issue accordingly.

Heiskell and Senter, JJ., concur.