14307

DIME TAXI CO. *ET AL.* v. CENTRAL MUTUAL INS. CO. OF CHICAGO

(186 S. E., 391)

December, 1935.

*Messrs. Hicks & Johnston,* for appellant,

*Messrs. Jester & Wooten* and *Wilton H. Earle,* for respondent.

June 9, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

In November, 1934, respondents were engaged in operating a taxi line in the City of Greenville, S. C., and had procured from appellant a liability policy, the said policy being entirely a contract between respondents and appellant. The pertinent parts of the policy, so far as it affects the questions raised by this appeal, are as follows: " '11. Further, the Company will investigate all accidents and claims covered hereunder, and defend in the name and on behalf of the Assured all suits thereon, even if groundless, of which notices are given to it as hereinafter required; and will pay, irrespective of the limit of liability provided for in Clause A, the expense (including as a part thereof Court Costs, all premiums on release-of-attachment, and all interest accruing after entry of a judgment for any part of which the Company is liable hereunder and up to the date of payment, tender, or deposit in Court, by the Company of its share of such judgment) incurred by it in such investigation and defense; but the Company reserves the right to settle any such claim or suit. The assured shall not voluntarily assume any liability nor interfere in any negotiations or legal proceedings conducted by the Company on account of any claim; not, except at his own cost, settle any claim, nor incur any other expense without the written consent of the Company previously given; except that he may provide at the time of the accident, and at the cost of The Company, such immediate surgical relief as is imperative.' and,"

On or about November 27, 1934, and while the liability policy of appellant, issued respondents, was in full force and effect, Miss Myrtle Mason, a passenger in one of the taxicabs of respondents, was seriously and severely injured, having a fracture of the skull, with a cut on her forehead down to the left cheek, and a fracture of the left femur, the bone of the left thigh just above the knee. Immediately following the accident in which Miss Mason was injured, she was carried to Greenville General Hospital and at the time she reached the hospital was in severe shock and uncon-

scious. Soon after she reached the hospital, Mr. F. Shahid, one of the respondents, went to the hospital after having been informed of the accident and injury to said passenger, and it is claimed by the surgeons, physicians, and hospital, for whose attempted benefit this action was brought, that Mr. Shahid authorized them to do everything necessary for Miss Mason, and in accordance with said authorization, operations were performed, medical observance and treatment given, and hospitalization for a period of several weeks, the physicians and surgeons charging for their services $200.00, and the hospital $364.25.

Upon the discharge of Miss Mason from the hospital, demand was made upon respondents to pay said fees, but respondents refused to pay same, denying that they had authorized the treatment and hospitalization. Thereupon, an action or actions were instituted by the surgeons and physicians, and by Greenville General Hospital against respondents, alleging the employment and authorization of necessary treatment and hospitalization of Miss Mason by respondents, and resulting in a verdict against respondents in the sums above mentioned; judgments for which amounts were entered up in the office of the clerk of Court for Greenville County as Judgment Rolls Nos. E-5181 and E-5182. Respondents contested the claims of the surgeons and hospital, denied at that time that they had authorized the surgeons and hospital to render any aid or give any treatment and hospitalization, and in the case at bar, when F. Shahid was placed on the witness stand, continued to deny that he had ever authorized the medical attention, surgical relief, and hospitalization. In the suits brought by the physicians or surgeons, and the hospital, against respondents, respondents, as aforesaid, filed answers denying liability, and employed counsel to defend the suits, paying to said counsel a fee of $50.00.

Before the commencement of this action, in the name of respondents, appellant effected a settlement with Miss Mason and took a general release from her covering all

matters in connection with the injuries she had suffered, and this was done with the knowledge and consent of respondents and with the reiteration by them that they had never authorized or become responsible for medical or surgical treatment of Miss Mason or for her hospitalization. At the time of the settlement with Miss Mason, she was represented by counsel.

Respondents never having paid anything on account of the judgments procured against them by the physicians and surgeons and the hospital, this action was instituted in their names against appellant. The complaint alleged that the injuries received by Miss Mason were covered by the policy; that it was the duty of appellant to defend said cases, which it failed to do, although notified, and that respondents were forced to employ counsel to defend said cases at a cost of $100.00 (it developed that $50.00 was the amount paid attorneys), which was a reasonable fee, and for which appellant was liable; that the hospital bill, the surgical bills, and attorneys' fees and costs in the judgments above referred to were protected by the insurance policy in question, and that appellant was liable therefor, and judgment was accordingly demanded.

Appellant answered, setting up a general denial, but admitted that an accident had occurred in which Miss Mason was injured; that if there was any liability on the part of the respondents for the hospital and doctors' bills it was an obligation which respondents incurred voluntarily, contrary to the terms of the policy, and for which appellant was not liable. As a further defense, it was alleged that on April 4, 1935, Miss Myrtle Mason was paid the sum of $300.00, and a complete release for the consideration of said sum was executed by her, which ended the case.

Upon a trial, a jury awarded a verdict in favor of respondents and against appellant in the sum of $664.25, which included an attorney's fee of $100.00, alleged to have been paid out by respondents in defending the actions of the

doctors, surgeons, and the hospital against them, but upon motion for a new trial, the judgment was reduced by the sum of $50.00, because all of the evidence showed that this was the amount paid the attorneys in the defense of the actions against them.

Appellant's first exception is as follows:

"(1) His Honor was in error in not excluding all testimony in this case and in holding that the Respondents were a proper party to bring the action; whereas, he should have held that Respondents were agents for Appellant and as such made a contract with doctors Earle and Bates and the Hospital, and that these parties would have to bring an action to recover on such contract in their own names, and that it would be improper for the agents to bring action upon such contract."

Appellant very frankly states that it desires this exception overruled. We are inclined to think that under the peculiar facts and circumstances of this case, this exception should be sustained, for the reason that respondents not only deny authorizing general treatment and hospitalization, but deny in their answer to the suits of the surgeons and hospital that they had promised to pay them anything, even for immediate and imperative relief.

It is contended by appellant that this provision in the policy is a most humane provision, since irrespective of any liability of the insured, the insured is given authority to contract indebtedness for immediate and imperative treatment to one injured, and that if some one other than the insured can bring an action against it, then it would be necessary for insurance companies in this line of insurance to, in self defense, eliminate this clause from its policies. That is, of course, something for insurance companies to determine. We would suggest, however, that this may be a most valuable clause to the insurer, since, to render immediate and imperative relief to one injured would no doubt tend to greatly minimize any damages which the insured or insurer may be

called upon to pay as the result of an accident. As has been held in a number of cases, the liability thus assumed by this clause in the policy is independent of the obligations otherwise provided in the policy, and is not strictly in the nature of indemnity. It would, therefore, appear that the facts and circumstances of each particular case would entirely determine who is entitled to bring the action against the insurer. If an insured provides and pays for such immediate surgical relief as is imperative following an accident covered by the policy, in that instance, the insured would have the right to maintain an action against the insurer for reimbursement. If the insured procures immediate surgical relief, as is imperative, and thereafter refuses to pay for same, the party or parties furnishing the immediate surgical relief, imperative at the time, would have the right to maintain an action against the insurer, not upon the theory, strictly speaking, that the insured was the agent of the insurer to procure immediate and imperative surgical relief, but upon the theory that this is a contract by the insurer to pay a reasonable amount to any person or persons called upon by the insured to render such surgical relief as may be imperative. Appellant raises the objection that if this be true then there would be no end in extreme cases, to paying claims under this clause of the contract or policy and that an insurance company would never know when it had finally and completely settled all claims for immediate surgical relief, considered imperative. It will be noted, however, that as prerequisite to a surgeon or a hospital claiming payment under this clause of the policy for services rendered, we have limited such right to the ones requested by the insured to render services, and that such services so rendered under the request shall come strictly within the intent and meaning of the policy.

We will now consider Exceptions 2, 3, and 5, all of said exceptions, in fact, raising but one question, to wit, the meaning of the phrase "such immediate

surgical relief as is imperative," as is used in the policy. Where a form of policy is issued, embodying such a clause, and without regard to the liability of an insured for an injury inflicted, we think it is obvious that it was not intended to contract to do more than the wording thereof clearly indicates, and the liability of the insurer, regardless of who is bringing the action, whether it be the party or parties who render service to the injured person or, the insured who is suing to recover amounts paid out for such service, should be limited in recovery to a reasonable sum for the immediate relief made imperative, dependent upon the injury. There can be no hard and fast rule laid down as to such services, but the nature of the injury and the severity thereof would necessarily govern and become a fact to be adjudicated by a proper tribunal, should there be a disagreement. We think a proper construction of this clause in the contract of insurance is well expressed in the case of *United States Casualty Co. v. Johnston Drilling Co.*, 161 Ark., 158, 255 S. W., 890, 891, 34 A. L. R., 727: "Now, the words 'such immediate surgical relief as is imperative' as used in the contract of insurance obviously contemplates emergency or 'first-hand' relief, in other words, such relief as must be given instantly or immediately following the accident to prevent impending death or to assuage or prevent suffering. These words have no reference to such surgical and medical treatment and hospital charges and compensation for nurses and such other expenses as are incident to, and necessarily incurred in, the usual and ordinary treatment of the victim of the accident some time after the accident occurred and which are continued in order to restore him, if possible, to his normal condition, and by so doing to lessen the damages for which the person causing the injury would be liable."

It therefore follows that said Exceptions 2, 3, and 5 are sustained.

Without discussing Exception 4, having held that respondents are not the proper parties to bring this action, this exception is necessarily sustained.

Exception 6 will have to be sustained. The action is based upon the clause in the policy hereinbefore quoted, and not upon any statement or promise to pay made by either Mr. Johnston, attorney for appellant, or Mr. Brewer, the attorney for Miss Mason.

It is unnecessary to discuss the remaining exceptions.

The case is reversed and remanded to the Greenville County Court, with instructions to dismiss the complaint of respondents.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.