R. H. CHITWOOD *v.* FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY

(No. 8428)

Submitted September 29, 1936. Decided October 27, 1936.

*James S. Kahle,* for plaintiff in error.

*Robinson & Stump, J. M. Holt,* and *A. J. Lubliner,* for defendant in error.

KENNA, JUDGE:

In an action by notice of motion for judgment brought in the Circuit Court of Mercer County, R. H. Chitwood obtained a verdict for $943.88 against Farm Bureau Mutual Autombile Insurance Company. Upon motion of the defendant, the trial court set the verdict aside and awarded a new trial. To the judgment of the trial court setting aside the verdict, the plaintiff below prosecutes this writ of error.

The wife of the plaintiff was injured in an automobile accident in Mercer County on July 7, 1935, and the recovery sought in this action is for surgical services, hospitalization, and treatment, claimed under section 10 of a policy of insurance carried by the plaintiff with the defendant, which reads as follows:

> "10. Public Liability: The public liability coverage insures the Assured against loss by reason of his legal liability to others for bodily injuries accidentally sustained, including death at any time resulting therefrom, on account of any accident due to the ownership, maintenance and use of the herein described automobile not to exceed the amount hereinbefore stated for the injury to, or death of, one person, and, subject to the same limit for any one person, a total for any one accident of the amount hereinbefore stated.

> "The Company shall not be liable under this coverage for bodily injury to, or death of, any employee of the Assured while engaged in the operation, maintenance or repair of the herein described automobile, accidents to any employee of the Assured arising out of or in the usual course of the trade, business, profession or occupation of the Assured, or to any person to whom the Assured may be held liable under any workmen's compensation law, plan or agreement.

"The Company shall not be liable under this coverage for bodily injury to, or death of, any member of the Assured's family residing with him or to a relative of the Assured who resides with him.

"Under this coverage the Company agrees to pay the expenses incurred by the Assured in providing such immediate medical and surgical aid to others as is imperative at the time of the accident."

Mrs. Chitwood was very severely injured, and was taken at once to St. Luke's Hospital in the City of Bluefield. Here, an operation, accompanied by a blood transfusion, was performed immediately and Mrs. Chitwood was not discharged from the hospital until August 25th. According to the bill of particulars filed at the request of the defendant, recovery was sought for all of the expenses incurred from July 7, 1935, the day of the accident, to and including August 25, 1935. There was an objection to each item embraced in the bill of particulars in addition to the position of the defendant below, properly raised in the record, that under the terms of the policy, the plaintiff is entitled to no recovery.

The defense advanced by the defendant below to defeat entirely the plaintiff's recovery is that under the terms of the policy the clause providing for the payment of the expenses of immediate medical and surgical aid to others is limited to that class of persons embraced within the coverage of section ten of the insurance contract after excluding those expressly excepted, and, because the wife of the assured falls within a class of persons excepted from that coverage, the insurance company is not liable to pay the expenses of immediate medical and surgical aid to her on account of an accident due to the use of the automobile described in the policy. This interpretation of the policy rests upon the contention that the words "to others", found in the fourth paragraph of the tenth section of the policy, relate to "others" as defined by the first three paragraphs of that section, a

construction which excludes "any member of the assured's family residing with him." This interpretation rests upon the assumption that the purpose of the fourth paragraph of section 10, by which the company agrees to pay the expenses incurred by the assured in providing immediate medical and surgical aid "to others," is to minimize the damages for which the company may be liable for personal injuries to others under the public liability coverage of its policy, and that where the possibility of liability of the company is excluded as a matter of law by the very terms of the policy itself, there is no liability to pay the expenses of medical and surgical aid. Similar clauses have been so construed. *Employer's Liability Assurance Corporation* v. *Light, Heat & Power Co.*, 28 Ind. App. 437, 63 N. E. 54; *Kelly* v. *Maryland Casualty Co.*, 89 Minn. 337, 94 N. W. 889. It is to be noted, however, that this result is arrived at *by construction*. The purpose of the clause is not stated in the policy. It is argued by the defendant in error that, since the sole purpose of the clause is to minimize damages for which the insurer would or might be responsible, its application must be confined to those cases in which liability could arise under the terms of the policy, and that those cases in which liability is excluded under the terms of the policy are necessarily not covered because, in them, the theory of minimizing damages could have no place.

While we agree that the purpose of the clause *includes* the minimization of such damages as the insurer might be required to pay, we cannot agree that this is the *sole* purpose of the clause and that that purpose alone should govern its interpretation. To do so, it seems to us, is to construe the clause as being entirely for the benefit of the insurer, and thus to place upon it an interpretation entirely out of harmony with the basic rule that doubtful language in insurance policies is to be construed most favorably to the insured.

Viewing the clause in question from the standpoint of the insured, it seems to us that it does no violence to the fundamental and generally recognized purpose of

insurance policies, nor to the language found in this particular contract, to say that it is intended to apply to all situations where accidents due to the use of the automobile insured are involved in which the insured may be called upon to render help in a sudden emergency. We think the clause is written in recognition of the fact that no person, actuated by what we are pleased to call the better motives of humanity, is going to pause in an attempt to balance the circumstances and to determine his own liability before rendering what aid he can to others who may be in agony or danger of death, regardless of who is to blame and regardless of the terms of his insurance policy. We believe that the clause is written in recognition of the fact that the impulse to help injured persons does not depend upon a calculation of legal liability, but springs powerfully and spontaneously to those upon the scene of the injury, particularly to others directly involved in the same accident. It seems to us that the clause must be interpreted as furnishing protection to the insured against the expense that he may incur while acting in response to so universal and worthy a feeling, limited, of course, to the reasonable demands of the circumstances.

The foregoing interpretation is in accord with provisions found in other parts of the policy before us. In the thirteenth section, headed "Exceptions and Exclusions," we find in the twelfth paragraph that expenses voluntarily assumed by the insured, *other* than for immediate surgical relief, are excluded from the company's liability. The same provision is contained in section 18 of the policy. The clear inference to be drawn from the use of these provisions is that the company intends to make itself responsible for expenses *voluntarily* assumed by the insured that *are* for immediate surgical relief. Since the class of cases where such an assumption would be *voluntary* on the part of the insured are those in which the insured would *not* be legally liable, and since the principle of minimizing damages would apply to those cases only in which the insured *would be* legally liable, it would seem that the language in ques-

tion would operate to prevent the provisions of paragraph four of section 10 being interpreted as solely for the purpose of minimizing damages, and hence limited to the class of persons not excepted from the coverage of the policy. This reasoning meets also, it seems to us, the argument of the defendant in error to the effect that the persons included in the word "others" as used in the fourth paragraph of section 10 are those only on account of whom the insurer may become liable under the terms of the policy. If this were the correct interpretation, there would be no room for a "voluntary" assumption of expenses on the part of the insured except where, on a purely factual basis, no liability existed in a case within the coverage of the policy. It is admitted by defendant in error that this meaning is too restricted and that the provisions of paragraph four of section 10, in fact, do apply to cases where no right of action has arisen under the facts, provided that liability could attach to the insured under the terms of the policy. Viewed in this manner, the coverage of paragraph four of section 10 is broader than that of paragraph one instead of being more restricted, since the coverage of the first paragraph is limited to those cases in which a cause of action against the insured exists on the facts.

Furthermore, reverting to section 10 of the policy, we are obliged to disagree with the construction placed by the defendant in error upon that section, by which it contends that the coverage referred to in the fourth paragraph of section 10 is that defined in the first paragraph *as modified* by the second and the third paragraphs. It will be observed that the coverage of the first paragraph of section 10 is comprehensive of all accidents due to the ownership, maintenance and use of the automobile described in the policy. It will be further observed that in the second paragraph, an exception to "this coverage" is set forth. It is perfectly plain that the expression "this coverage," as contained in the second paragraph, refers to the coverage defined in the first paragraph. The third paragraph sets forth another exception to "this coverage," and since the last quoted ex-

pression, as it is used in the second paragraph, relates to the coverage defined in the first paragraph, we cannot give it any different meaning as it appears in the third paragraph. Going to the fourth paragraph, we find that it refers to "this coverage," and for the reasons just set out, we think that it is quite apparent that it refers to coverage within the first paragraph of the section, and not to that coverage as modified by the provisions of the second and third paragraphs. The rule is that an expression to which a plain meaning is attached in one part of an instrument will be held to have the same meaning in other parts of the same instrument, unless a contrary purpose plainly appears. We are therefore of the opinion that the effect of the fourth paragraph of section 10 is to render the company liable for expenses incurred by the assured in providing immediate medical and surgical aid to others embraced within the coverage of the first paragraph of the same section.

Having determined that the policy is intended to cover expenses incurred by the insured in providing immediate medical and surgical aid to others, such as is imperative at the time of accident, not excepting members of the assured's family residing with him, the remaining question is whether the items embraced in the recovery of the plaintiffs below, as represented by the verdict, were for medical and surgical aid both imperative and immediate at the time of the accident. In considering the questions thus raised, the first inquiry is whether we can say as a matter of law that any of the items included in the aggregate recovery represented by the verdict do not fall within the definition of immediate medical and surgical aid imperative at the time of the accident. If it is clear that they are not within that category, then the court should not have permitted them to be included within the verdict. That, in our opinion, is as far as the court should have gone. If the items were such as might or might not have been within the recoverable category, then the question of their propriety under the circumstances was for the jury. In other words, this question is one primarily to be determined by all of the

facts and circumstances of the case, and, unless the exclusion or inclusion of the items is clearly right, the determination is one resting upon facts and inferences appropriately to be arrived at by the jury.

The aid provided for must be both "imperative" and "immediate." In this case, we have little difficulty with the former term because it is quite apparent under the facts that aid to Mrs. Chitwood was imperative. The question of whether the aid rendered, for which it is sought to hold the insurance company responsible, was immediate is more difficult. The record makes it comparatively clear that the surgical operation, the blood transfusion and the hospitalization were all immediately imperative and were immediately furnished. It is equally apparent that as a result of the surgical operation, it was impossible to remove Mrs. Chitwood from the hospital for some little time. If the operation itself was immediately necessary and if hospitalization for a recuperative period following the operation was inevitable, it would seem logical that the expense of the hospitalization following the operation is so much a part of it as that it also would have to be regarded as immediately necessary. It is hardly to be supposed that the assured could incur the expense of the operation and refuse to be responsible for the inevitable expense that would follow that operation. A hospital could hardly be asked to take a patient and to perform a major operation, making it impossible for the patient to leave the hospital without having some one to look to for the expense of keeping the patient there for the necessary period after the operation was performed. And yet in determining what is and what is not immediate medical and surgical aid, there naturally is some place that the chain of causation must be broken. Where this place plainly appears, the ruling is for the court. Where it rests upon conflicting testimony or divergent inferences, it is for the jury. In this case, we cannot say the entire recovery represented by the verdict did not rest upon items of expense incurred for imperative surgical help immediately neces-

sary, or inevitably arising from the rendition of such help.

For the reasons stated, we are of opinion to reverse the judgment of the Circuit Court of Mercer County, to reinstate the verdict and to enter judgment thereon for the plaintiff.

*Reversed and rendered.*