ALSAM HOLDING COMPANY, INC., Plaintiff, *v.* CONSOLIDATED TAXPAYERS' MUTUAL INSURANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Bronx, Second District, May 3, 1938.

*J. M. Poss*, for the plaintiff.

*Joseph S. Robinson* [*Emanuel Saget* of counsel], for the defendant.

LEVY, J. The plaintiff, Alsam Holding Company, Inc., was the owner of a residential and store building at 1601 University avenue, in the Bronx. The defendant insurance company issued to the plaintiff corporation what is known as an " Owners, Landlords and Tenants Public Liability Policy." The defendant agreed to investigate at its expense accidents reported to it; to make such adjustments and settlements at its expense as it may deem advisable; " to defend, in the name and on behalf of the Assured, any claim or suit against the Assured even if groundless;" to pay all court costs taxed against the assured, and all interest accrued on any judgment obtained against the assured arising from such

accidents. The defendant also agreed, among other things, " to indemnify the Assured from the liability imposed by Law upon the Assured for damages on account of bodily injuries * * * accidentally suffered or alleged to have been suffered * * * by any person or persons not employed by the Assured while within or upon the premises * * *, from any cause whatsoever " (Except, in so far as the present case is concerned, the causes mentioned below).

A list of eleven exceptions (each of which includes a number of items) is specified in the policy. Condition A (listing the exceptions) provides that " This policy shall not cover any accident. * * * (9) In respect to bodily injuries or death caused to any person who may be the husband, wife, child or parent of the Assured or caused to any officer or director of the Assured or caused in the portion of the premises occupied by the Assured as a residence for himself and his family, or for business purposes."

The sole stockholders, officers and directors of the assured — the plaintiff corporation — were Sam Poss, his wife Katie, and their son Alex E. At the time of the accident involved in this case, and for some time prior thereto, Abraham Poss, a man over eighty years of age, resided in and occupied by himself a two-room apartment in the plaintiff's building. Abraham Poss was the father of Sam Poss, and thus the father-in-law of Katie Poss, and the grandfather of Alex E. Poss.

After sundown, and at about six in the evening of Friday, December 10, 1937, Abraham Poss, while walking from the bedroom of his apartment to the living room, tripped over the saddle and fell at the threshold of the intervening doorway in the apartment. The lighting fixture in the bedroom of the apartment was loose from its mooring in the ceiling and it was, therefore, not lit.

Sam Poss and his wife Katie resided in the same building but not in the apartment occupied by Abraham Poss. At the time of the accident to Abraham Poss, Mrs. Katie Poss was going into the former's apartment. She saw him trip and fall. She called the building superintendent, who lifted the injured man and put him to bed, and there he remained until the next evening. The other officers of the plaintiff corporation, Sam and Alex E. Poss, were informed of the accident that same evening, December tenth.

Dr. Samuel Pasachoff, a grandson of the injured man, was called on the following day. He found the patient in a state of shock, and diagnosed the case as a possible fractured femur. Bedside X-rays were arranged for, which, promptly taken and promptly developed, confirmed the diagnosis. Dr. Pasachoff was of the opinion — as was his brother, another medical gentleman —

that immediate surgical attention was necessary. A family debate ensued, in which the plaintiff's three officers participated, as to whether hospitalization was advisable, in view of the advanced age of the injured person and of his weakened condition. The advice was sought of two experts (not related to the family), one an orthopedic surgeon, the other a consultant. In their opinion, immediate removal to a hospital and a reasonably speedy operation were necessary to prevent death, notwithstanding the serious danger to life involved in the bodily transfer itself. Between nine and ten in the evening of December eleventh the injured man was removed in a private ambulance to the Hospital for Joint Diseases, in Manhattan.

At the hospital, temporary treatment was given the patient in the form of traction, as well as to reduce the shock concurrent with the fracture sustained as a result of the accident. Prompt preparations were made, too, for a major operation to reduce the fracture. This operation was performed on December fifteenth at the hospital by the orthopedic surgeon previously consulted, and who had assumed charge of the case on December eleventh. The operation involved, among other things, cutting into the leg and binding the broken pieces of bone with a silver nail.

At the time of the trial, held on the 17th and 18th days of February, 1938, Abraham Poss was still at the hospital, receiving treatment, undergoing examinations — physical and roentgenological. The operation seems to have been successful. It was the opinion of the doctors, given at the trial, that it would be safe for the patient to leave the hospital about two weeks after the trial, and that it would probably not be safe for him to leave earlier.

Written notice from plaintiff, dated December 17, 1937, was given to the defendant of the accident. How it was transmitted does not appear. The defendant claimed that it received the notice on December 21, 1937. That was the first time that defendant was aware of the accident. On December 23, 1937, the defendant in writing acknowledged receipt of the report, and gave certain instructions as to the investigation the defendant was going to make. The defendant, with the cooperation of the plaintiff, had a physical examination of the injured person, and oral statements were given to the defendant's investigator by Katie Poss and the superintendent.

The agreements of the defendant, contained in the policy, were " Subject to the Following Conditions "— A through T, being twenty in number. Condition " D," provided for " Cooperation of Assured " in the following language: " The Assured shall cooperate with the Company and upon the Company's request shall assist in effecting settlement, securing evidence and the attendance

of witnesses and shall cooperate with the Company, except in a pecuniary way, in all matters which the Company may deem necessary in the defense of any suit or in the prosecution of any appeal, but *the Assured shall not* interfere in any negotiations for settlements, nor in any legal proceeding, nor voluntarily make any payment, assume any obligation or *incur any expense other than for immediate surgical relief, except at his own cost.*" (Italics mine.)

The plaintiff, alleging that it made payment for the " immediate surgical relief " to Abraham Poss, instituted this action on January 18, 1938, for the expense thus incurred. The suit was for $954.50. At the trial, by amendment, a reduction of one item was made, and an addition of other items, resulting in the amount of the plaintiff's present claim herein being $871.35.

The agreements of the defendant, contained in the policy, were also made subject to the following conditions:

"Accidents, Claims and Suits" " C. In the event of accident, written notice shall be given to the Company, or any of its authorized agents, by or on behalf of the Assured as soon as reasonably possible thereafter. Such notice shall contain information respecting the time, place and circumstances of the accident, with the name and address of the injured and any available witnesses. * * *

"Notice to Company" " E. The Assured shall give immediate written notice of any accident * * *, and the failure to give any notice required to be given by the policy within the time specified therein shall not invalidate any claim made by the Assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that the notice was given as soon as was reasonably possible."

Issues, numerous and thought provoking, were raised by the parties. Still others were posed by the court. I have considered them all. I shall comment on several.

(1) The defendant argues that the plaintiff is not entitled to recover for the expense incurred by it for the immediate surgical relief of Abraham Poss because the plaintiff failed to give due notice of the accident as required by the terms of the policy.

In *Abitante* v. *Home Indemnity Co.* (240 App. Div. 553) notice given forty-nine days after the occurrence of an accident was held not to be " prompt," as required by the policy. In *Reina* v. *United States Casualty Co.* (228 App. Div. 108; affd., 256 N. Y. 537) twenty-six days was not " immediate." In *Rushing* v. *Commercial Casualty Ins. Co.* (251 N. Y. 302) twenty-two days was

not " immediate." In *Gullo* v. *Commercial Casualty Ins. Co.* (226 App. Div. 429) fourteen days was not " immediate." In *Haas Tobacco Co.* v. *American Fidelity Co.* (226 N. Y. 343) " some ten days " was held not " immediate notice " to the insurer.

In all of these cases the policy required " prompt " or " immediate " notice. Bouvier, in his Law Dictionary, defines the word " immediately " to mean the same as " forthwith," and says that the words " immediately " and " forthwith " " are stronger than the expression ' within a reasonable time ' and imply prompt, vigorous action without any delay."

In the present case the notice required to be given to the insurance company is referred to in two clauses of the policy. One of them (Clause E) requires " immediate written notice of any accident," unless " it shall be shown not to have been reasonably possible to give such notice " immediately. The other clause (C) requires that notice shall be given the company " in the event of accident " " as soon as reasonably possible thereafter." As in *Gerka* v. *Fidelity & Casualty Co.* (251 N. Y. 51, 55), " The policy was prepared by the defendant and, in case of ambiguity, must be construed against it." I am of the opinion that, under the terms of the instant policy, " notice within a reasonable time after the accident " is the notice contemplated therein — not instantaneous or immediate notice.

" The rule has been repeatedly stated that a reasonable time, when the facts are undisputed and different inferences cannot reasonably be drawn from the facts, is a question of law. This is one of those general rules, however, which is sometimes difficult of application, and results in the question being left to a jury when it is near the border line." (*Greenwich Bank* v. *Hartford Fire Ins. Co.*, 250 N. Y. 116, 131.)

Whether viewed as a matter of fact or of law, I hold that the notice in this case was not unreasonably delayed. It is my view that notice to the defendant on the twenty-first (assuming the defendant's testimony on this point) of an accident that occurred in the evening of the preceding tenth is not inadequate notice within the meaning of the notice clauses of the present policy. In any event, no precedent has been cited to me which holds to the contrary. The closest is the *Haas* case — but there the policy required " immediate " notice, and notice of that accident was not given until " *some* ten days later "— precisely how many days does not appear from the opinions either in the Appellate Division (178 App. Div. 267) or the Court of Appeals (226 N. Y. 343). And see *Rieger* v. *Travelers Ins. Co.* (160 Misc. 605).

(2) Thus far, I have conceived the provisions as to notice in the policy as having the same meaning and efficacy, irrespective of whether we are considering the defendant's liability to defend and indemnify or its duty to reimburse for expenditures for immediate surgical relief. But, in my view, there is a deep-rooted distinction between these two obligations of the defendant which definitely makes for a differentiation in the time element applicable to the notice clause, as well as in the effect of delay in giving notice. Where the defendant must investigate, preserve evidence, negotiate, defend and indemnify, it is quite understandable why prompt notice is required. Not so prejudicial is delay in giving notice where what the defendant must do is reimburse for expenditures already incurred. The purpose of requiring notice is obviously more vigorous in one case than in the other; and therefore the rule of law should be less rigorous in the latter case than in the first.

In *Greenwich Bank* v. *Hartford Fire Ins. Co.* (250 N. Y. 116, 127) it was held that twelve days which elapsed between a fire and the notice of loss was not fatal as a matter of law, even though the policy required " immediate notice of loss." I recognize, of course, that decisions in fire insurance cases are not ordinarily safe guides in determining whether there is undue delay in notice in an action involving a liability policy. But that is because the usual issue in such an action involves the indemnity clause in a liability policy, not a reimbursement clause after expenditure already incurred. Where the problem is the effect of delay of notification after such expenditure, it seems to me that the reasoning of the fire insurance cases is applicable. The effect of delay of notification after the fire loss of the assured is similar to the effect of delay of notification after medical expenditures incurred by the assured. In such cases it is held that courts " are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction of the conditions which prescribe the formal requisites by which the right is to be made available, and, therefore, that those provisions should be reasonably and not rigidly construed." (*Solomon* v. *Continental Fire Ins. Co.,* 160 N. Y. 595, 600.) As the point of notice in such a case " relates to those things which must be done by the injured [the assured] in connection with the remedy," " A liberal construction always obtains with reference to the procedure after loss." (*Greenwich Bank* v. *Hartford Fire Ins. Co.,* 250 N. Y. 116, 131.)

(3) Moreover, the very juxtaposition of the clauses in this policy inevitably leads to the conclusion that condition D ("Cooperation of Assured "), authorizing expense for " immediate surgical relief,"

is not affected by condition C ("Accidents, Claims and Suits"), or by condition E ("Notice to Company"). The clauses marked C, D and E are all conditions to the express covenants of the policy; they are not conditions to each other.

The form and substance of the present contract are that "the Company hereby agrees with the assured" "1. To indemnify the assured from the liability * * *; 2. To make such investigation * * * or to make such settlement * * *; 3. To defend * * *; 4. To pay all costs of the Company's investigation and adjustment of claims, all costs taxed and all interest accrued." Such covenants and agreements in this policy are expressly made "Subject to the Following Conditions," being twenty in number from A through T, including those requiring notice, co-operation, etc.; and it is in one of these conditions (referring to co-operation of the assured) that we glean the power of the plaintiff to incur expense, as an obligation of the defendant, for immediate surgical relief. (Cf. *Upton Cold Storage Co.* v. *Pacific Coast Casualty Co.*, 162 App. Div. 842.)

The policy involved in the present suit does not expressly provide in its *contracting portion* that the company *agrees* to pay for such immediate surgical relief — subject to the conditions, among others, that the assured duly notify the company of the accident.

Condition D in the present policy, it is true, obligates the company to reimburse the assured for expenses incurred by it for immediate surgical relief. But this is so even though there is no express covenant; the duty of reimbursement is implied in fact and in law. " Now, it must be noted, that this is entirely separate from its main or chief liability." (*Dupont* v. *Dupont*, [1914] Rep. Jud. [Quebec], 47 Cour Supérieure, 50, 52.) " As has been held in a number of cases, the liability thus assumed by this clause in the policy is independent of the obligations otherwise provided in the policy, and is not strictly in the nature of indemnity." (*Dime Taxi Co.* v. *Central Mut. Ins. Co.*, 180 S. C. 426; 186 S. E. 391. See *Employers Liability Assur. Corp.* v. *Manget Bros. Co.*, 45 Ga. App. 21; 165 S. E. 770.)

And the conditions lettered A to T in the policy in suit are conditions upon the insurer's obligation to indemnify, contained in the covenants numbered 1 through 4 in the policy. The requirement of notice is stated as a condition of that obligation. In other words, the requirement of notice is a condition upon that obligation of the insurer which (after the receipt by it of the premium) has been assumed solely for the benefit of the assured.

The obligation of reimbursement, implied from clause D, is, however, assumed by the insurer because the power vested in the

assured to incur expenses for immediate surgical relief is for the benefit of the insurer. " The clause in question is intended to minimize the amount of liability." (*Employers Liability Assur. Corp.* v. *Light, Heat & Power Co.,* 28 Ind. App. 437; 63 N. E. 54.) " It would be to appellant's advantage to provide direct authority to call a physician immediately, in order that by immediate medical attendance the amount of liability might be decreased. From this point of view the provision for quick surgical relief may be treated as independent express authority conferred upon the assured for that purpose." (*Kelly* v. *Maryland Casualty Co.,* 89 Minn. 337; 94 N. W. 889.)

Some of the cases speak of this clause as creating an " agency " in the assured (*Employers Liability Assur. Corp.* v. *Manget Bros. Co.,* 45 Ga. App. 721; 165 S. E. 770), or an " authorization " to the assured' (*Dupont* v. *Dupont,* [1914] Rep. Jud. [Quebec], 47 Cour Supérieure, 50) to procure immediate surgical relief for the injured person at the insurer's expense. Still others say that this clause in the policy " is a contract by the insurer to pay a reasonable amount to any person or persons called upon by the insured to render such surgical relief as may be imperative." (*Dime Taxi Co.* v. *Central Mut. Ins. Co.,* 180 S. C. 426; 186 S. E. 391.) Indeed, in these and other cases (See *Fenton* v. *Fidelity & Casualty Co.,* 36 Ore. 283; 56 P. 1096), it is held that the third party furnishing the relief would have the right to maintain a direct action against the insurer to recover the reasonable value of such services. Clearly, therefore, the clause empowering the assured, expressly or impliedly, to procure immediate surgical relief for an injured person, at the expense of the insurer is separate and distinct from any other clauses — agreements or conditions — of the policy.

There are thus two reasons why the condition of notice is not a condition upon the company's obligation to reimburse the assured for expenses incurred for immediate surgical relief: *First,* this obligation to reimburse is not expressly conditioned upon the requirement of notice. *Second,* this obligation, assumed for the insurer's own benefit, has no relation to the requirement of notice. I am of the opinion that the condition of notice should be superimposed as a condition precedent only upon those obligations of the insurer which are for the benefit of the assured; it should not be a condition precedent to an obligation which the insurer assumes for its own benefit.

It should, of course, be quite clear that when I say the clause, requiring reimbursement to the assured for the expense of immediate surgical relief to the injured, is for the benefit of the insurer and is inserted for the purpose of minimization of the amount of its

liability, I do not mean that it so operates in every case. Nor does this fact nullify the reasoning. Theoretically the company will be called upon to pay no damages whatever to the injured person — for his injuries, medical expense or otherwise — unless the assured is legally liable for the particular accident. And it will be made quite clear presently that the clause operates precisely when there is no liability for the accident itself. My point is that, in general, the clause works to the advantage of the insurer, who wants the assured to render immediate surgical relief in every case and not to ponder over what at times may be the nebulous niceties of legal responsibility. (*Chitwood* v. *Farm Bureau Mut. Automobile Ins. Co.*, 117 W. Va. 797; 188 S. E. 493.)

I hold, therefore, that the obligation of the company implied from clause D is not limited by clauses C and E requiring notification of the accident within the prescribed period.

(4) But, aside from all else, I am of the opinion that by its conduct after the receipt of the notice, on December twenty-first, the defendant waived the alleged failure of the plaintiff to give prompt notice, if such notice were required.

The written notice stated precisely when the accident occurred, and that the injured person was taken to the hospital. Unlike *Rushing* v. *Commercial Casualty Ins. Co.* (251 N. Y. 302, there was no " prompt disclaimer of liability " by the defendant. And, unlike *Weatherwax* v. *Royal Indemnity Co.* (250 N. Y. 281, 287), there were no " reservations or conditions " " imposed by the insurer, and assented to by the insured through tacit acquiescence " or otherwise. On the contrary, the defendant acknowledged in writing receipt of the notice, gave instructions to the plaintiff, interviewed the plaintiff's officers and superintendent, obtained through the plaintiff a physical examination of the injured person, and asked for and received information from the plaintiff as to the medical treatment and expenses. Under such circumstances, the defendant waived any right to take its present position, and is estopped from raising the question. (*269 Canal Street Corp.* v. *Zurich General Accident & Liability Ins. Co., Ltd.*, 226 App. Div. 516; *Uttervack-Gleason Co.* v. *Standard Accident Ins. Co.*, 193 id. 646; affd., 233 N. Y. 549; *Miller* v. *Union Indemnity Co.*, 209 App. Div. 455, 457; *Carpenter* v. *German American Ins. Co.*, 135 N. Y. 298, 304; *Hunter* v. *Federal Casualty Co.*, 199 App. Div. 223, 228; *Rosenwasser* v. *Globe Indemnity Co.*, 224 N. Y. 561.)

When a party with knowledge or sufficient notice of his rights freely does what amounts to a recognition or adoption of a contract as existing, or acts in a manner inconsistent with a claim of repudiation, he assents to it and is equitably estopped from impeaching it,

although it originally may have been void or voidable. (*Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458, 464.)

Both on the facts and on the law (*Alsens American Portland Cement Works* v. *Degnon Contr. Co.*, 222 N. Y. 34, 37; *Gerka* v. *Fidelity & Casualty Co.*, 251 id. 51,. 57), I am of the opinion that failure of the defendant at the proper time to assert the claim that the notice was untimely, and proceeding without complaint or reservation, permits the inference that the defendant intentionally waived its rights. (Cf. *S. & E. Motor Hire Corp.* v. *New York Indemnity Co.*, 255 N. Y. 69, 75.)

If the company, upon receipt of the notice of the accident, or thereafter, had informed the plaintiff that the policy was ineffective because of breach of condition as to notice, the plaintiff might not have incurred some of the expense which it did assume for the surgical relief accorded the injured person. It seems to me that there was a duty upon the defendant to speak and that silence was a breach of that duty. I hold, therefore, that the defendant should be required to remain silent.

(5) It is claimed by the defendant that the motive of plaintiff's officers in affording medical attention to the injured was filial, and not because the plaintiff, *qua* assured, wanted to mitigate damages for the benefit of the defendant insurance company. I shall not indulge in speculation as to the motive; as I view this issue, the matter of motive is quite immaterial. If the defendant wanted to limit its general liability for indemnity or to limit the plaintiff's power in particular to incur expense for immediate surgical relief — so as to exclude from the operation of condition D, surgical relief to a parent of an officer of the insured — it could very easily, and should, have provided therefor in the policy, just as it did in making other exceptions. The policy, by its express terms, excepted any accident in respect to bodily injuries caused to a " parent of the Assured or caused to any officer or director of the Assured." It does not follow that an accident caused to the parent of an officer or of a director of the assured is also excluded. The fact that the injured person is related to those interested in the insured corporation does not preclude recovery for the expense incurred by it for immediate surgical relief. This is merely one of the facts to be taken into consideration in determining whether the expense thus incurred is reasonable in amount and whether it was reasonably incurred.

(6) What is " *immediate* surgical relief " is ordinarily a question of fact, to be determined in view of all the circumstances. Two issues are raised. How soon after the accident must the relief begin? How long after the accident may the relief continue?

The defendant relies strongly upon *Ayles* v. *Hartford Accident & Indemnity Co.* (223 App. Div. 780), where the policy covered " expense incurred in providing immediate surgical relief *at the time the injuries were sustained.*" (Italics mine.) The court there held that " the policy clearly contemplates but ' first aid ' treatment." (See, also, *United States Cas. Co.* v. *Johnston Drilling Co.,* 161 Ark. 158; 255 S. W. 890.) The present policy is not so limited, but, even if it were, the Court of Appeals has held that this clause is not necessarily limited to first aid treatment; but, " in the absence of more definite terminology," " its intent and scope must depend upon the nature and circumstances of the accident." (*Laidlaw* v. *Hartford Accident & Indemnity Co.,* 254 N. Y. 391, 395. See, also, *Dime Taxi Co.* v. *Central Mut. Ins. Co.,* 180 S. C. 426; 186 S. E. 391; *Dupont* v. *Dupont,* [1914] Rep. Jud. [Quebec], 47 Cour Supérieure, 50.)

The accident here occurred in the early evening of December tenth. Medical attention was not given forthwith. The delay was undoubtedly occasioned by the lack of knowledge on the part of the plaintiff's officers of the nature or extent of the injury. When that was suspected, surgical relief was promptly given. Examination, tentative diagnosis, re-examination, X-rays, definite diagnosis, removal to a hospital — all followed in quick succession, on the day following the accident. It seems to me that the clause, " immediate surgical relief," does not exclude surgical attention given immediately upon ascertaining the need therefor within a reasonable time of the accident. The fact, therefore, that X-rays were not taken and the injured man was not removed to a hospital until the day following the accident does not preclude the treatment thus given from being " immediate surgical relief " within the meaning of this policy, under the circumstances of this case. The purpose of the clause — to protect the interests of the insurance company by mitigating the injuries — and thus to diminish the possible claim for damages — is best served by the construction which I here give to it.

Nor does the fact that the major operation took place at the hospital five days after the accident warrant the contention that, as a matter of law, the surgical relief was not " immediate " within the meaning of this clause. Prompt removal to the hospital was mandatory, in the professional opinion of medical experts. The patient's age, the seriousness of his injury, the attendant shock, all required preparations to be made for the more serious phase of the surgical relief. Pending this operation, medical attention was accorded the patient by way of traction to reduce the fracture and care to reduce the shock.

Whether the surgical relief was major or minor, temporary or permanent, it was none the less surgical relief immediately afforded the injured person. (*Dunham* v. *Philadelphia Casualty Co.*, 179 Mo. App. 558; 162 S. W. 728.) " The clause in question is intended to minimize the amount of liability, and the word ' immediately ' is entitled to a liberal, rather than a strict, construction. It relates to a time after the accident. There must be, usually, some interval between the injury and the rendition of medical assistance. It can not have been intended to designate only medical assistance rendered without the lapse of any appreciable time after the accident." (*Employers Liability Assur. Corp.* v. *Light, Heat & Power Co.*, 28 Ind. App. 437; 63 N. E. 54.)

I conclude that the bedside X-rays ($20) and the hiring of the ambulance to take Abraham Poss from home to the hospital ($10) were certainly necessary and immediate. Imperative, too, was confinement in the hospital from December eleventh until at least January twenty-first. (Why not, in my opinion, beyond that date is hereinafter explained.) This hospital cost amounted to $264. There can be no dispute about the urinalysis ($1), the use of the operating room ($15), the anesthesia ($5), and the X-ray photographs taken on the day of the operation ($26). Special nurses were engaged from December twelfth for a period of seven days at a cost of $57; this item is not allowed because, among other things, there is no proof that they were necessary. Dr. Sonnenschein's bill for $250 for the diagnosis, operation and attendance was not questioned as to reasonableness of amount, and I find that his services were necessary as a part of the immediate surgical relief contemplated by the policy. The cost of the X-rays taken January tenth ($6) and January twenty-first ($6) is allowed the plaintiff. The drugs of $3.35 are disallowed.

How long after the accident may surgical relief continue in order that it be deemed immediate within the meaning of the policy? I do not agree that the reasonable time after the accident, within which necessary medical attention to the injured may be rendered by the assured at the insurer's expense, " could in no event extend beyond the period within which the notice of the accident was or should have been forwarded and such further interval as might have been necessary to enable the [insurer] corporation to act in the matter." (*Employers Liability Assur. Corp.* v. *Light, Heat & Power Co.*, 28 Ind. App. 437; 63 N. E. 54. See, also, *Taylor* v. *Federal Surety Co.*, 225 Ky. 335; 8 S. W. [2d] 409; *Bales & Learn* v. *New Amsterdam Casualty Co.*, 5 Tenn. App. 181.) Of course, " in determining what is and what is not immediate medical and surgical aid, there naturally is some place that the chain of causation

must be broken." (*Chitwood* v. *Farm Bureau Mut. Automobile Ins. Co.*, 117 W. Va. 797; 188 S. E. 493.) It is my view that the chain of causation is broken and the surgical relief is no longer deemed " immediate " when such relief begins to partake of recuperative medical treatment. When this occurs depends, of course, upon the circumstances of the individual case.

The patient in the present case was in the hospital from December 11, 1937, until the time of the trial, February 17 and 18, 1938, and it was expected that he would remain there for about two weeks longer. On January tenth an X-ray photograph of his right hip was taken and again on the twenty-first of that month. The patient was then undoubtedly able to move about, because, on January twenty-first, crutches were purchased for his use. True, he remained in the hospital for some weeks thereafter at the expense of the plaintiff, and during that period X-ray photographs were taken again. These things " may have been necessary for the proper treatment of the case, but they do not come within the category of the 'immediate and the imperative'" (*Laidlaw* v. *Hartford Accident & Indemnity Co.*, 254 N. Y. 391, 394, 395), or even of the " immediate," to use the precise language of the present policy. And, of course, " the power to bind the corporation must be found in the written contract." (*Employers Liability Assur. Corp.* v. *Light, Heat & Power Co.*, 28 Ind. App. 437; 63 N. E. 54.)

This eliminates expenses for the hospital room and board subsequent to January twenty-first and for the X-ray photograph taken February eleventh. While the doctors gave it as their opinion that it would probably not be safe for Mr. Poss to leave the hospital until about March first, it is significant that there is no proof that Dr. Sonnenschein continued in charge of the case until the trial, held some two weeks earlier. That is an indication that the immediacy of the surgical relief no longer existed.

(7) Finally, it is suggested by the defendant that there is no proof of liability of plaintiff, as landlord, to Abraham Poss, as tenant, for the accident.

Where, clearly and palpably, there is no possible liability, it has been suggested elsewhere that payment by the assured for immediate surgical relief would be deemed a fraudulent exercise of his agency. (*Employers Liability Assur. Corp.* v. *Manget Bros. Co.*, 45 Ga. App. 721; 165 S. E. 770.) That, however, is not the view of the Court of Appeals in this State. The accident in the *Laidlaw* case obviously happened without any fault upon the part of the assured. (254 N. Y. at p. 393.)

Be that as it may, it is clear from the present record that the defendant did not prove that there was no liability upon the plaintiff for the accident. Nor was any attempt made by it to do so. And there are sufficient facts before me reasonably to warrant the inference that there may be a possibility of such liability — and that, I think, suffices. The assured's liability to the injured person for the accident is not a *sine qua non* to the insurer's responsibility to the assured for expenses incurred for immediate surgical relief. (34 Columbia Law Review, p. 523.) " This clause is purposely written in a form broad enough to include medical attention to others than persons to whom the insured is legally liable. At a time of serious casualty it is not desirable that the elements of legal liability be dispassionately weighed before assisting persons in dire distress. It is only humane to help such persons at once. In that sense, the policy extends a privilege to the insured not necessarily contemplated by a liability contract. Indirectly, this expense is probably repaid by the minimizing of serious injuries and the creation of good will between the policyholder and the injured party." (Appleman, Automobile Liability Insurance, p. 102.)

In the present policy the defendant agreed to indemnify the plaintiff from liability for injuries accidentally suffered or alleged to have been suffered upon the premises " from any cause whatsoever," and to defend any claim or suit against the assured, " even if groundless." If the plaintiff were liable to the injured person for the accident, then the plaintiff (after payment of the judgment against it in favor of the injured person) would ordinarily recover from the defendant (included in the judgment) the amount of the medical expenses, whether for immediate surgical relief or not. But if plaintiff is not liable to the injured person for his injuries, the plaintiff may, under the terms of the policy, still recover from the defendant the expense incurred for immediate surgical relief. (Cf. *Northwestern Casualty & Surety Co.* v. *Rose*, 185 Ark. 263; 46 S. W. [2d] 796.)

Judgment is rendered in favor of the plaintiff in the sum of $603. Five days' stay of execution after service of a copy of the judgment with notice of entry.