Penquite v. Dunn.

---

No. 27,367.

ELGIN E. PENQUITE, *Appellee,* v. FRANK L. DUNN, Mayor of the City of Wichita, et al., *Appellants.*

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS — *Firemen's Relief Fund — Mandamus to Compel Granting of Pension Benefits.* Where a city has created a firemen's relief fund under authority of statute, and a fireman in the service of the city who had contributed dues and deductions from his monthly salary towards its creation and maintenance was injured in the line of his duty, which injury was so serious as to totally incapacitate him and to require him to undergo one or two serious surgical operations to facilitate a cure without a greatly preponderating probability that a complete cure would thereby be effected, and where because of overweight and high blood pressure developed during his enforced inactivity resulting from his injury he would not be eligible to restoration to his position in the city's fire department, a decision of the board of trustees of the firemen's pension fund on an *ex parte* consideration of plaintiff's case that he was not permanently injured and denying him a pension was arbitrary and oppressive, and in disregard of plaintiff's rights under due process of law, and the plaintiff was entitled to vindicate his right to be retired and pensioned by proceedings in mandamus.

Appeal from Sedgwick district court, division No. 3; GROVER PIERPONT, judge. Opinion filed May 7, 1927. Affirmed.

*A. V. Roberts, Vincent F. Hiebsch* and *Carl L. Winsor,* all of Wichita, for the appellants; *Robert C. Foulston* and *George Siefkin,* both of Wichita, of counsel.

*Kos Harris, V. Harris* and *M. P. Shearer,* all of Wichita, for the appellee.

Municipal Corporations, 28 Cyc. p. 554 n. 4, 5. Pensions, 50 L. R. A. n. s. 1018; 21 R. C. L. 242.

The opinion of the court was delivered by

DAWSON, J.: This was a proceeding in mandamus to compel the board of trustees of the firemen's pension fund of the city of Wichita to order the retirement of plaintiff from active service in the city's fire department and to grant him the pension benefits of that fund because of permanent injury and consequent disability sustained by him in the line of his duty as a fireman.

The statute authorizing the creation of this fund, R. S. 13-718 *et seq.*, is in operation in Wichita.

The defendant board refused to pension the plaintiff because on an *ex parte* consideration of plaintiff's case it had decided that plaintiff's injury could be cured by one or two surgical operations to which it was his duty to submit and that plaintiff had declined to undergo that treatment.

The trial court heard the evidence for the parties, one significant feature of which was that even if plaintiff should submit to the one or two surgical operations essential to his cure, he would not be restored to his position in the fire department because of his overweight and high blood pressure which had developed during his enforced inactivity growing out of his long-continued incapacity.

The trial court made extended findings of fact, some of which read:

"3. At the time the Wichita department came under the pension fund law a $5 fee was deducted from his salary and one dollar a month thereafter for the pension fund.

. . . . . . . . . . . . . . . .

"5. The inguinal ruptures are complete, allowing the intestines to drop into the scrotum when not prevented by a truss. A major operation or, perhaps, two major operations would be necessary to cure Penquite of these hernias. Penquite is about 30 per cent overweight and has high blood pressure. An operation in his case would have about 90 per cent chance for success. Death would likely result in from one to two cases out of one hundred of persons in his condition so operated upon. If two operations were found necessary, the chance of death would be doubled. No reputable physician would undertake such a major operation without the consent of the patient. Local anæsthetic would be used and if the operations proved successful, recovery should take place in from six to eight weeks. *Even if operated upon and recovery resulted, he would not, on account of his blood pressure and physical condition be able to pass an examination so as to resume his duties as fireman.* Before December 21, 1921 [date of injury], Penquite was a man apparently in good physical condition, but there is no evidence clearly showing the con-

34—123 KAN.

dition of his blood pressure at that time and from that time up until the time of the trial.

.     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"From the evidence I find that the inguinal hernias were caused in the manner and on the occasion stated; that Penquite is permanently disabled and incapacitated by reason of said injuries; and that said injuries were received by him while in the performance of his duties and are attributed thereto.

"6. Penquite has not, by reason of his injuries, done any other work since July 14, 1922, and has been, and is unable to do any physical labor." . . .

The trial court's conclusions of law, in part, read:

"1. An injured fireman, under this act, before being retired and placed under the pension fund is not compelled to submit to a major operation or operations where the chances of death are as great as one to four per cent, and the chances of successful operation ninety per cent, and where such an operation, even if successful, would not render him fit to resume his duties as a fireman.

"2. Where a fireman contributes to the pension fund from his monthly salary, he has an interest in the fund and is not bound by an examination by physicians appointed by the board but may come into a court of equity for determination of his rights."

Judgment for plaintiff was ordered as prayed for; and the defendants appeal, contending that the question of plaintiff's right to be retired and pensioned was one for the exclusive determination of the defendant board, and not reviewable by a judicial tribunal.

The statute does not say so in express terms. And without an express statutory grant of such power, this court would be loath to give its sanction to any official board's claim to such an undemocratic prerogative. In *Supreme Lodge v. Raymond*, 57 Kan. 647, 47 Pac. 533, it was said:

"The right of resort to the courts will not be deemed to have been taken away by mere inference; and, if it can be done at all, it will only be where the restriction is stated in the clearest and most explicit terms." (Syl. ¶ 2.)

In *State, ex rel., v. Mohler*, 98 Kan. 465, 472, 158 Pac. 408 (*Payne v. Kansas, ex rel. Brewster*, 248 U. S. 112, 63 L. Ed. 153) this court said that the sort of power which our legislature is wont to confer upon the various official boards it creates is that of administrative discretion, which, if abused, is subject to judicial correction—either by some statutory review or "by the extraordinary and prerogative remedies of injunction or mandamus." To the same effect was *Photo Play Corporation v. Board of Review*, 102 Kan. 356, 359, 169 Pac. 1154.

It hardly needs to be emphasized here that by virtue of plaintiff's

contributions to the creation of the firemen's relief fund he had an interest in that fund which could not be cut off by the mere *ex parte* nonjudicial action of the board where plaintiff had no chance to present his side of the controversy and have it fairly considered. (*Reno Lodge v. Grand Lodge,* 54 Kan. 73, 80, 37 Pac. 1003; *Supreme Lodge v. Raymond,* supra.)

Defendants cite cases showing how chary courts are to interfere with the acts of official boards and officers, to which doctrine, speaking generally, this court yields ready adherence. But the vindication of the rights of individuals who have claims requiring fair consideration at the hands of official boards is just as sacred as due recognition of these boards' discretionary powers. Defendants cite the case of *Board Trustees Firemen's Pension Fund v. McCrory,* 132 Ky. 89, 21 L. R. A., n. s., 583, where it was held that mandamus will not lie to control the action of a board of trustees of a firemen's pension fund where the statute made the decision of the board final and conclusive and not subject to revision or reversal except by the board itself. That express statutory prerogative vested in the board, and which is wholly wanting in our statute, renders the Kentucky decision of no significance in the present case. We note, however, that the Kentucky supreme court took space to remark that if it had jurisdiction to review the decision of the trustees, if would hold that the trustees had erred in refusing to grant the appellee a pension. It is therefore not improper to observe that the Kentucky statute which expressly made the decision of a nonjudicial tribunal final and conclusive did not make for justice, in the considered and weighty opinion of the supreme court of that commonwealth.

More in accord with our view is the case of *Stevens v. Minneapolis F. D. R. Asso.,* 124 Minn. 381, 50 L. R. A., n. s., 1018, where it was held that a fireman had a vested right in a pension fund in which he had contributed out of his wages; and that such a fireman injured in the course of duty had a claim for a pension out of that fund of which he could not be denied except by due process of law; and that the action of the defendant association in canceling his right to a pension without notice and a chance to be heard was illegal and void. The court said:

"The funds from which the pensions are paid are contributed by the state and the city of Minneapolis, and from dues and assessments imposed upon the members of the fire department. . . . Each fireman contributes to the fund in the form of annual dues of $8, and this, if there be no other reason, vests

in him substantial rights of which he cannot be deprived except by due process of law. . . . The situation is wholly unlike the ordinary pension, such as that granted by the federal government to dependent soldiers of the Civil War; for there the pension is a mere gratuity or bounty which may be taken away at any moment. . . . In the case at bar the pension fund is created in part by the payment of dues by the members of the fire department, who may ultimately become pensioners, and the rights acquired by the firemen are analogous to those possessed by members of mutual benefit societies. 28 Cyc. 555. We therefore hold that the pension in question is not, as contended by the appellant, a mere gratuity to be granted or withheld at the whim or pleasure of the association.

". . . While it is true that the articles of association and the by-laws provide that the determination by the association of questions of disability and injury is final and conclusive, those pensions must be construed in the light of the legal rights of the parties, and in harmony with the fundamental doctrine that no person can be deprived of his property or property rights except by due process of law; and this means notice and opportunity to be heard. . . . It is clear that in determining the question whether a member shall be dropped from the pension list, and thereby deprived of the benefits conferred and vested thereby, the association acts in at least a *quasi* judicial capacity; for the determination affects the vested legal rights of the pensioner, and he should be afforded an opportunity to protect and defend those rights. 10 Am. & Eng. Enc. 296, *et seq.; State v. Dunn,* 86 Minn. 301, 90 N. W. 772. It follows then, for the reasons stated, that the determination of the question of his removal is not conclusive." (pp. 383, 384, 385.)

It is also urged that the evidence showed that plaintiff's disability could have been overcome by one or two surgical operations to which it was his duty to submit, and *Strong v. Iron & Metal Co.,* 109 Kan. 117, 198 Pac. 182, is relied on to enforce this argument. The case cited arose under the workmen's compensation act where injuries to workmen in certain industries are a more or less arbitrary charge upon the particular business in which the workman is engaged. The workman pays nothing towards the maintenance of a fund out of which he is to receive compensation under that statute. The present case is more like a claim against a mutual benefit society to the benefit funds of which the claimant has contributed by the payment of dues and assessments. The plaintiff was required to contribute to the raising and maintaining of the fireman's pension fund. Furthermore it is not nearly so clear in this case as it was in *Strong v. Iron & Metal Company,* supra, that one or two surgical operations would restore Penquite to health and vigor. Indeed, the trial court's finding No. 5 recites that if defendant should undergo the requisite surgical operations he would not be restored, or physically fit to be

restored to his position in the city's fire department. That being true, defendants have no excuse for withholding the pension to which the statute, the rules of the department, his physical injuries sustained in the public service, and his resulting permanent incapacity, justly entitle him.

The judgment is affirmed.