No. 35,697

JAY ROY DENTON, *Appellee*, v. GLENN WEST et al., *Appellants*.

(131 P. 2d 886)

Opinion filed December 12, 1942.

*J. Richards Hunter*, of Hutchinson, was on the briefs for the appellants.

*Max Wyman* and *Erskine Wyman*, both of Hutchinson, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a proceeding in mandamus by a fireman of the city of Hutchinson to compel the board of trustees of the firemen's pension fund of that city and its treasurer to pay the pen-

sion benefits of that fund claimed to be due under the provisions of G. S. 1935, 13-758 to 13-767, inclusive, by reason of the fact the fireman had been retired because of permanent disability after he was more than fifty years of age. The writ was allowed, and defendants appeal.

The parties concede the judgment depends on the provisions of the above-mentioned statutes and particularly on the proper construction of G. S. 1935, 13-762. The material facts are conceded to be as follows: Appellee became a member of the fire department of the city of Hutchinson on August 17, 1923, and served continuously as a member thereof, first as a fireman and finally as a captain, until January 15, 1941, or a period of seventeen years and approximately five months. During that period the city of Hutchinson established a firemen's pension fund, and has been operating thereunder at all times. During the existence of such fund appellee, at all times until his retirement, paid his membership fees as provided by G. S. 1935, 13-766. He was retired on January 15, 1941, by order of the defendant board, because of permanent physical and mental disability. At that time his age was fifty years and nine months. His disability was determined by physicians duly appointed to examine him by the defendant board in accordance with the provisions of G. S. 1935, 13-762. Although in the answer to appellee's motion for the alternative writ appellants pleaded appellee's disability was due to his own excesses and improper conduct and personal living habits, the examining physicians did not so find. With slight variation the report of the three physicians was to the effect that appellee was suffering from chronic encephalitis, chronic myocarditis with an aortic insufficiency, and chronic nephritis. They in nowise indicated this condition was caused by appellee's improper conduct. Their report was merely to the effect that the condition did not grow out of his work as a fireman. His application for a pension appears to have been denied by the board, upon advice of counsel, solely for the reason and upon the ground his disability was not service-connected.

Upon these admitted facts the trial court found and concluded appellee was within the provisions of the act and ordered defendants to pay the monthly installments then due and to continue the payment of such pension as provided by law. The pertinent portion of G. S. 1935, 13-762, provides:

"That any member of a fire department within the provisions of this act who shall, while a member of such department and while engaged in the per-

formance of his duties as a fireman, be permanently disabled, and upon an examination by a physician or physicians appointed by the board of trustees and paid by same, be found to be physically or mentally disabled as a result of such permanent injury or disability so as to render him unfit for the performance of his duties as a fireman, shall be entitled to be retired, and the board of trustees shall thereupon order his retirement and upon being retired shall be paid out of the firemen's pension fund of such city, monthly, a sum of one-half of the monthly salary at the date of his permanent injury or disability; *or any officer or member of the fire department more than fifty years of age, and having served twenty years, or more, in such fire department, of which the last two years shall have been continuous, or has been retired because of disability,* may make application to the board of trustees to be placed on the pension list, and upon such application being granted, the board of trustees shall pay monthly to such member so retired a sum equal to fifty percent of the salary or wages such officer or member was receiving at the time of his retirement or disability, . . ." (Italics ours.)

All parties concede the facts do not bring appellee within the first part of the statute preceding the italicized portion thereof for the reason that such part of the statute, ending with a semicolon, constitutes one distinct classification for pensions, which applies only to cases in which the disability of the applicant is service-connected.

The first real controversy is whether the italicized portion of the statute was intended to create only one additional classification to that first described or whether it was intended to create two additional classifications of persons who may receive pensions under the act. Appellants contend the italicized portion creates only one additional classification and that it is limited to an officer or member of the fire department who is more than fifty years of age and who has served twenty years or more in the department, of which the last two years were continuous. Appellee admits the italicized portion creates such a second classification, but he insists it is not restricted or limited to such second classification. He contends it definitely creates a third classification which embraces any officer or member of the fire department who is over fifty years of age at the time he is retired by order of the defendant board because of disability to do the work.

The cardinal rule of statutory construction requires that courts ascertain the legislative purpose and intent, if reasonably possible to do so, to the end that the will of the lawmakers may be made effective. (*Hunziker v. School District,* 153 Kan. 102, 109 P. 2d 115.) Obviously, the statute in question is not exactly a model of clarity. That fact makes our problem more difficult but it does not

relieve us of our duty. The first portion of the act is plain and clearly applies only to service-connected disability cases. The second classification, which both parties agree was created by the act, is separated from the first part by a semicolon and the disjunctive word "or" and it makes no mention of service-connected disability. The third classification, if such was intended, is likewise separated by means of the disjunctive "or," and here again service-connected disability is not mentioned.

Was a third classification intended to be created by the italicized portion of the statute which pertains to the subject of retirement? If that was not the intention there was no occasion whatever for referring to the subject of retirement in connection with disability in that part of the statute. Manifestly, we cannot arbitrarily ignore the language which clearly pertains to the subject of retirement. We also observe the title to the instant law (Laws 1935, ch. 119) purports to be:

"An act relating to and providing for the creation, maintenance and management of funds for the pensioning of crippled, disabled *and retired firemen,* . . .; *the retirement* from service of officers or members of the fire department and the *pensioning of such,* their widows, minor children and dependents. . . ." (Emphasis supplied.)

It is also noted the first section of the act (G. S. 1935, 13-758) authorizes and empowers any city (such as the city of Hutchinson) to create funds—

"For the purpose of pensioning firemen, and affording relief to members of such department when sick, *or* who may become disabled in the service *or may be retired.* . . ." (Emphasis supplied.)

Here again the provision for service-connected disability is separated from the subject of retirement by the disjunctive "or." In view of all these considerations, and others which might be noted, it seems clear the legislature intended to create a third classification which pertains to the subject of retirement. Who was included in that classification? We think it a reasonable construction to conclude the legislature intended to make the benefits of the act available also to officers and members of the fire department who had become more than fifty years of age and who were retired by reason of disability.

Appellants argue that since the first classification clearly requires service-connected disability we should insert the words "service connected" in the italicized portion of the statute. With this con-

tention we cannot agree, for reasons already stated. We may further say it clearly appears service-connected disability is not required in the second classification and, in view of the language employed, there is no greater reason for inserting the words "service-connected" in the third classification than there would be to insert them in the second classification.

Appellants also stoutly maintain it would be unwise to conclude the words "service connected" were not intended to be a part of such classification, and that grave consequences would result if "service-connected" disability were not required. It must always be remembered it is not the province of courts to determine the wisdom of legislative policy. (*Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747; *State v. Momb,* 154 Kan. 435, 441, 119 P. 2d 544.)

Acts which provide pensions for firemen, like other acts, should be construed to give force and effect to the legislative intent as embodied therein. It is the purpose of pension acts to be beneficial and they should be liberally construed in favor of those intended to be benefited thereby. (43 C. J., § 1493, p. 843.) If dire results, such as appellant anticipates, should follow, the lawmakers are free to protect the beneficent purposes of the act by amendatory legislation.

This brings us to the second important problem involved in this mandamus proceeding. It will be noted that in the first portion of G. S. 1935, 13-762, in which permanent disability must be service-connected, the statutory direction is that in the event of such disability the fireman shall be entitled to be retired and the board of trustees shall thereupon order his retirement and that upon being retired he shall be paid, etc. That particular provision for a pension appears to have been intended to be mandatory in the event the required disability was found to exist pursuant to the method therein prescribed. It will be noted, however, that as to the second and third classifications the direction for the payment of a pension does not appear to be mandatory. It says such officer or member of the fire department . . . "may make application to the board of trustees to be placed on the pension list and, upon such application being granted, the board of trustees shall pay . . ."

We need not now debate the possible reasons, or wisdom, for such a distinction. For present purposes it is sufficient to note that the distinction exists and that the board did not grant the application for a pension. Can the board of trustees be compelled to grant and

pay the pension in this particular case? It would appear it was probably the intention of the lawmakers to leave to the board of trustees a reasonable discretion in passing upon applications involved in the second and third classifications. Manifestly, the board could not arbitrarily exercise such discretion (*Penquite v. Dunn*, 123 Kan. 528, 256 Pac. 130) and in the instant case there is no indication it did act arbitrarily. It appears its decision was based upon a point of law. It was clear to the trial court, and it is clear to us, that the board of trustees, upon the advice of counsel, rejected the application solely and alone upon the ground the disability was not service connected. Having concluded, as a matter of law, that service-connected disability is not made a prerequisite to relief by the particular provision of the statute now under scrutiny, it follows the writ was properly allowed. That is all we are required to decide now and that is the extent of the decision in the instant case.

The judgment is affirmed.