EZRA GILBERT *v.* AMERICAN · CASUALTY COMPANY

(No. 9493)

Submitted September 21, 1943. Decided October 19, 1943.

*Richardson & Kemper,* for plaintiff in error.
*Jerome Katz,* for defendant in error.

**144**

Rose, Judge:

To a judgment of the Circuit Court of Mercer County in favor of Ezra Gilbert and against American Casualty Company for Eight Hundred Thirty-five Dollars and Sixty Cents ($835.60) and interest, we awarded this writ of error.

The action is for the recovery of a claim of the plaintiff for expenses alleged to have been incurred by him for immediate medical and surgical relief to guest passengers injured, without his fault, when his car was struck by another, and which is claimed to have been imperative at the time of the accident. The plaintiff was covered by a policy of insurance issued by the defendant which contained the following provision: "It is further agreed that * * * the company shall * * * pay * * * expenses incurred by the Insured, in the event of bodily injury, for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

On October 1, 1940, the plaintiff with his wife and her sister, Mrs. Edna Goldstein, as guests in his car, was driving on a public highway near Harrisonburg, Virginia. His car was struck by another, whose sole fault for the accident is not questioned. Both women were injured. Mrs. Gilbert's injuries proved to be slight, but those of Mrs. Goldstein are shown to have included a fractured skull, a fractured sixth cervical vertebra, a fractured shoulder bone, a dislocated jaw, and lacerated face with profuse bleeding, accompanied by severe shock and unconsciousness. The plaintiff hurried both women to a hospital in Harrisonburg, where they were admitted, and where they received prompt and appropriate physical examination followed by hospital care and surgical treatment. Mrs. Gilbert was discharged within two or three days from her admission, but Mrs. Goldstein remained in the hospital until November 6, 1940. The entire expenses of both women, including the bills of the hospital and those of the surgeons and nurses, were paid by the plaintiff, amounting in the aggregate to the sum for which

judgment was rendered. Claim was made by the plaintiff to the insurance company for reimbursement for this expense, which was refused. At the trial the defendant tendered and paid into court the sum of Fifty Dollars, which it asserted to be sufficient to cover its whole liability under the policy. The ultimate question on the trial was as to what portion of plaintiff's claim, if any, above the Fifty Dollars tendered, was recoverable under the provisions of the policy.

The examination of Mrs. Gilbert disclosed that she had received no injuries of serious consequence, and she received no treatment other than sedatives within the two or three days during which she remained in the hospital. Mrs. Goldstein was admitted to the hospital about eleven o'clock a. m. She was given what was by the surgeons called "treatment for shock" and was immobilized as a protection against further aggravation of her injuries by her own movements. An X-ray examination was made about five o'clock p. m, of that day, by which the extent of her injuries was discovered. She was wholly unconscious for about twelve hours and had extended recurring irrational periods for several weeks, caused, according to the testimony, by the skull fracture. The laceration of her face prevented the application of a cast to her injured neck. She was, therefore, permanently immobilized in bed by the use of sand bags, and required thereafter constant attention by nurses lest some movement of hers increase the pressure of the broken vertebra on the spinal cord and produce paralysis. No reduction of any of the fractures was required, and no operation of any kind was performed except a puncture of the spinal cord to relieve pressure on the brain, occasioned by the skull fracture. In this manner she was detained in the hospital until she had sufficiently recovered for discharge.

Some appraisal of the policy provision relied upon by the plaintiff is necessary. This provision is apparently now common but relatively new. Therefore, judicial interpretations thereof, though found in reported cases, are

not many. We think, however, that, as applied to this case, little difficulty in the way of its construction will be encountered.

It is at once seen that the coverage given by this provision of the policy is of very limited extent. It cannot by any construction be made to cover all expenses of or all injuries of all persons in every wreck in which the assured's car may have a part. For example, the coverage is limited to expenses for medical and surgical "relief" to injured persons. This word is very clearly intended to be in contradistinction to some other surgical or medical treatment. The word standing alone connotes, in common parlance, temporary and emergency assistance. The word by Webster is defined as "Act of relieving, or state of being relieved; the removal, or partial removal, of any evil, or of anything oppressive or burdensome, by which some ease is obtained; succor; alleviation; comfort; ease"; and as "that which removes or lessens evil, pain, discomfort, uneasiness, etc.; that which gives succor, aid or comfort". The character of surgical or medical aid intended by the word "relief", therefore, must necessarily be limited to such things as are done to prevent suffering, to stop further progress of the injury, or death, rather than to include the normal treatment for the cure and healing of the injured person. *Employers' Liability Assurance Corporation* v. *Manget Bros. Co.*, 45 Ga. App. 721, 165 S. E. 770; *Dunham* v. *Philadelphia Casualty Co.*, 179 Mo. App. 558, 162 S. W. 728; *United States Casualty Co.* v. *Johnston Drilling Co.*, 161 Ark. 158, 255 S. W. 890; *Alsam Holding Co.* v. *Consolidated Taxpayers' Mut. Ins. Co.*, 4 N. Y. S. (2d) 498; *Taylor* v. *Federal Surety Co.*, 225 Ky. 335, 8 S. W. 2d 409; *Dime Taxi Co.* v. *Central Mutual Ins. Co.*, 180 S. C. 426, 186 S. E. 391.

But it is not even all such "relief" that is covered by the policy, but only that which is "immediate" and "shall be imperative at the time of accident". Treatment which would normally be administered from time to time subsequently, or even emergency assistance rendered neces-

sary by subsqent developments, is not included. *Dunham* v. *Philadelphia Casualty Co., supra.* To a lay mind certain surgical aid might, without question, be accepted as being immediately imperative, such as an adequate surgical examination for the discovery of the extent of the injuries, control of hemorrhage, appropriate stimulants, removal of foreign body near vital organs. Equally certain would be the conclusion that long extended treatment for healing, curing, rehabilitation and restoration of the injured person to health could under no stretch of this language be considered as "relief" which was either immediate or imperative at the time of the accident.

In *Chitwood* v. *Farm Bureau Mutual Automobile Ins. Co.,* 117 W. Va. 797, 188 S. E. 493, we held that a major operation which was immediately necessary, including subsequent attention to the operation, which included the entire period of hospitalization, was immediate "relief" within the meaning of a like clause in an insurance policy. A similar holding is found in *Laidlaw* v. *Hartford Accident & Indemnity Co.,* 254 N. Y. 391, 173 N. E. 557, where the hospitalization period was of fourteen days. But here there was no operation, and no critical condition is shown to have existed after the first few days, yet a verdict for the entire expenses of six weeks treatment was rendered.

It is true that the policy does not by means of hours or days, or by way of dollars and cents, or by any other method of measurement, fix an exact and precise line up to and beyond which the coverage does not extend. But it does state general terms which can be applied to the circumstances of each case for determining the limit of protection. As indicated in the opinion in the *Chitwood* case, a line between emergency treatment and that which is rehabilitative must necessarily exist, though not developed in evidence in that case. In the present case it is perfectly clear that a substantial amount of the surgical aid given to these injured persons was covered by the policy; but it is equally certain that the larger part of the treatment, and expense incurred thereby by the plaintiff,

is not so covered. See *Ayles* v. *Hartford Accident & Indemnity Co.*, 227 N. Y. S. 618. A mathematical line may be difficult to establish. The change from emergency to restorative treatment is not so sudden or distinct. There will necessarily be a twilight zone where the treatment for a short period will partake of the character of both, but in a careful trial of such a case there ought to be little difficulty in establishing this margin within reasonable and practical limits. The burden, of course, is on the plaintiff so to do. Here he attempted to fix this line at the discharge of the patients from the hospital. In this we think he has clearly failed. The defendant undertook to establish the line at the expiration of twenty-four hours from the injury, and, we think, was equally unsuccessful. The correctness of these conclusions will fully appear by a brief summary of the evidence.

We cannot but observe that there is not in the record any definite testimony indicating any specific thing done for either of these patients after the emergency treatment on the first day, except the spinal puncture administered to Mrs. Goldstein "two or three days" after her admission to the hospital. The doctors speak of having these patients in charge until they were discharged from the hospital and indicate visits to them but nothing whatever is shown of their treatment. This clearly does not prove that the services rendered during that period were of emergency character. Nor is this deficiency in the evidence aided in the least by the answer "Yes" to questions submitted to the doctors as to whether the services they rendered throughout the period of hospitalization were immediate and imperative at the time of the accident. We further note the same absence of factual statement in the testimony of the nurses, except the statement that Mrs. Goldstein needed constant guarding to prevent injurious movement on her part.

Even this fragmentary evidence is challenged on the ground that it is elicited by leading questions. This Court and trial courts are reluctant to interfere with verdicts

on the sole ground that the sustaining evidence was produced by leading questions. But a large part of the evidence on which the plaintiff must rely was educed by questions by which certain material facts were sought to be proven or by questions embodying a conclusion stated more or less completely in the technical language used in the insurance policy, to which questions the witness, over objection of the defendant, was invited to give his mere assent or dissent. Questions in this form are improper. *Sayre* v. *Woodyard*, 66 W. Va. 288, 62 S. E. 320; *Brodie* v. *Clator*, 8 W. Va. 599. The trial court has considerable discretion as to the permission of such questions; and probably was more lenient toward this impropriety by reason of the fact that this evidence was by depositions, thus making a reframing of the questions impossible without a retaking of the evidence; but the evil from a persistence in this type of questioning is cumulative and cannot be ignored unless it appears that the answers were not prejudicial to the opposite party. *Hendricks* v. *Monongahela West Penn Public Service Co.*, 111 W. Va. 576, 163 S. E. 411. Also we note that the two nurses were permitted to testify that the services which they rendered were necessary and even imperative at the time of the accident, without any showing whatever as to their qualifications other than that they were "graduate nurses". Testimony by an expert witness not shown or admitted to be qualified is always inadmissible. *Dashiell* v. *Griffith*, 84 Md. 363, 35 A. 1094; *Gates* v. *Nichols' Sanatorium*, 331 Mo. 754, 55 S. W. 2d 424; *In re Flatau's Estate*, 10 Cal. 2d 701, 76 P. 2d 506; *Shawnee Gas & Electric Co.* v. *Hunt*, 32 Okla. 368, 122 P. 673. *Quaere*: May a nurse who merely administered to a patient certain treatment prescribed by the attending surgeon as in this case, be permitted to testify as to the necessity or appropriateness of such service?

Another element proper and necessary to be considered upon the limitation of the defendant's liability arises from the fact that "a few days" after the accident the husband

of Mrs. Goldstein appeared, and that he frequently visited her in the hospital. It would seem that the moral obligation, or legal right, of a mere volunteer to determine and prescribe for an injured person, surgical and hospital treatment, would not extend beyond the arrival of the person who has legally the responsibility for, and the authority to prescribe, the treatment of the injured person. So far as the present record discloses, there was no reason why the plaintiff should have been either required or permitted to continue to direct, or to be responsible for, the treatment of Mrs. Goldstein after the husband's appearance. "The moment that regular hospitalization ensues and ordinary medical care is rendered under the direction of a husband, wife, father, mother, or other relative of the injured person it must seem that first aid has stopped". Appleman, Automobile Liability Insurance, page 105.

One further feature of the plaintiff's case requires discussion. The plaintiff testified that "On arrival at the hospital, the attendants would not immediately admit her (Mrs. Goldstein) unless somebody knew who would be responsible for the debt. I didn't think of anything except go ahead and tell them to give her immediate attention, I would see about the bills, and pay any necessary amount to take care of her." This was evidently intended to make it appear that, before even emergency aid could be procured, he was compelled to, and did, assume the bills which he subsequently paid, and for which he now sues. But the policy itself expressly provides that "The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident". Further, the evidence introduced on behalf of the plaintiff clearly fails to sustain this apparent theory of plaintiff's case. An executive of the hospital, called by the plaintiff, testified that in this case, as in all of like character at this hospital, while an effort was

made to obtain a guaranty of the hospital bill before admission, the patients would have been admitted without such arrangements; and, from the whole evidence, it clearly appears that the arrangement between the hospital and the plaintiff was at most a guaranty, rather than an assumption of expenses by the plaintiff, and extended no further than its own charges, which are shown to have amounted only to Two Hundred Forty-nine Dollars and Seventy Cents ($249.70) for Mrs. Goldstein and Seventeen Dollars and Ten Cents ($17.10) for Mrs. Gilbert. There is no indication in the evidence that the doctors or nurses had any such agreement with the plaintiff, or knew of any such agreement made on their behalf. On the contrary, all bills from the three doctors and the two nurses, as well as those of the hospital, were made out in the names of the patients, while the doctors testifying say that they did not even know that these bills were mailed to Mr. Gilbert. The plaintiff, therefore, not only by reason of this provision of the policy, but also upon the clear showing in the evidence, has failed on this theory of his case.

We are, therefore, of opinion that the evidence in this record does not sustain the verdict as rendered and accordingly reverse the judgment of the court, set aside the verdict of the jury, and award the defendant a new trial.

*Reversed and remanded.*