No. 45,228

PETER J. LAUBER, *Appellant* and *Cross Appellee,* v. THE FIREMEN'S RELIEF ASSOCIATION OF SALINA, a Corporation, *Appellee* and *Cross Appellant.*

(451 P. 2d 488)

Opinion filed March 8, 1969.

*D. E. Watson*, of Salina, argued the cause and was on the brief for the appellant and cross appellee.

*L. O. Bengtson*, of Salina, argued the cause and was on the brief for the appellee and cross appellant.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from the district court of Saline County involving application of the Firemen's Relief Fund Act (K. S. A. 40-1701, *et seq.*) and procedures relative thereto.

Basically the questions presented are interwoven with the construction of K. S. A. 40-1707 and K. S. A. 60-2101 (*a*), the appeal statute under the new code of civil procedure.

The fumbling of this case from its inception through the Firemen's Relief Association of Salina and in the courts of this state warrants a rather extensive consideration of the facts in an effort to give some authoritative guidance in the application of the act establishing the Firemen's Relief Fund. (K. S. A. 40-1701 to 40-1707, incl.)

Peter J. Lauber was employed by the Fire Department of the city of Salina, Kansas, from January 19, 1957, to July 15, 1963. Lauber alleged in his claim for relief that he was injured on the 11th day of December, 1961, while discharging his duties as a

member of the Salina Fire Department. At that time the firemen were fighting a fire at the "Barn" in the 200 block south between 7th and 8th Streets in the city of Salina, Kansas. Lauber suffered injury and physical disability to his back and spine when he fell from a ladder while holding the nozzle of a fire hose by reason of a blast of smoke and heat which hit him while so performing his duties as a fireman. At the time Lauber was thirty-three years of age.

On the 12th day of December, 1961, Lauber notified the Firemen's Relief Association of his injury by informing his captain and lieutenant.

After the accident Lauber had extensive pain in his back, but continued to perform his usual duties for the Salina Fire Department. On August 30, 1962, Lauber gave notice to the Firemen's Relief Association of Salina that he would undergo a spinal fusion on September 13, 1962, by informing the president of the Association. The spinal fusion was performed by Dr. Roy B. Coffey of Salina as scheduled, and as a result Lauber was totally disabled from September 13, 1962, to March 22, 1963. When he first returned to work Lauber was unable to perform full duties as a fireman.

Lauber was paid full salary as a member of the Fire Department of the city of Salina from December 11, 1961, to July 15, 1963, except for the months of January, February, March and a part of April, 1963. The salary for the unpaid balance was $1,120. No relief was provided for him during this period.

After Lauber's injury and prior to August, 1962, in addition to his work as a fireman, he worked for Mr. McCabe fixing fence and for Beverly on a swimming pool. Subsequent to July 15, 1963, Lauber was employed by Richardson Storage and Transfer as a driver, by Nelson Truck Lines as a driver, and by Saline Concrete as a driver. His employment was substantially continuous from July 15, 1963, to August 24, 1965. After August 24, 1965, he has drawn some unemployment.

The Firemen's Relief Association of Salina (defendant-appellee-cross appellant) is a Relief Association incorporated under the laws of Kansas pursuant to K. S. A. 40-1707, and ordinances of the city of Salina of identical wording.

At the time of Lauber's injuries the Firemen's Relief Association had approximately $110,000 in its treasury. It carried coverage on the members of the Fire Department of the city of Salina with

Blue Cross-Blue Shield and Maryland Casualty Company. Eighty-five percent of the premiums on this insurance was paid by the Firemen's Relief Association and fifteen percent by the fireman. The fifteen percent was for coverage of time when the fireman was not on duty.

Lauber made application for the Blue Cross-Blue Shield insurance and knew of its coverage. Blue Cross-Blue Shield paid all of his medical expenses except Asbury Hospital, $15 and Mowery Clinic, $36. The coverage by Maryland Casualty carried on Lauber was an accident and health policy. The trial court found Lauber failed to make claim under the Maryland policy within the time limits and consequently was unable to collect thereunder. The beneficiary under this policy was the Firemen's Relief Association, but the Association is required to hold any proceeds paid thereunder in trust for the injured fireman. The Firemen's Relief Association failed to make any claim under the Maryland policy by reason of Lauber's injuries, Chief Travis contending at the hearing before the Firemen's Relief Association that it was Lauber's duty to make such application.

Lauber in his claim for relief against the Firemen's Relief Association sought loss of wages, while totally disabled and still employed as a fireman for and with the Fire Department of the city of Salina, for the months of January, February, March and a part of April, 1963, in the total sum of $1,120.20 together with interest at the rate of six percent from April 15, 1963, to September 3, 1965, in the sum of $160.37 (total $1,280.57). He also claimed relief for fifteen percent permanent partial disability calculated on a life expectancy of 41.25 years from July 15, 1963, in the total sum of $26,581.50 plus interest thereon at the rate of six percent from such date in the sum of $3,406.86. The total loss and relief requested by Lauber as a result of his injuries and resulting physical disability together with interest amounts to $31,268.93.

On the 15th day of April, 1964, Lauber caused to be served on the Firemen's Relief Association a "Demand for Payment of Loss Due to Injuries and Physical Disability Sustained while Discharging Duties as a Fireman." After Lauber had waited for more than thirty days and the Firemen's Relief Association and its officers did not comply with his demand, he filed a petition in mandamus in the district court of Saline County against the Firemen's Relief Association and its officers to compel them to pay his claim from

funds in their possession. This action was dismissed by the district court and on appeal to the Supreme Court was affirmed on the 12th day of June, 1965, in *Lauber v. Firemen's Relief Assn. of Salina,* 195 Kan. 126, 402 P. 2d 817. The court there held the remedy of mandamus could not be used to control discretion or to enforce a right which is in substantial dispute. The record there disclosed Lauber had not requested a hearing, or that a hearing had been denied to him by the Firemen's Relief Association.

On the 6th day of July, 1965, Lauber filed a petition with the Firemen's Relief Association requesting payment from the Firemen's Relief Fund of the sum of $30,995.64 plus interest because of injuries and physical disabilities resulting from the accident on December 11, 1961. On the 5th day of August, 1965, the board of directors of the Firemen's Relief Association held a hearing on this petition at which Lauber presented his claim. All members of the board of directors were present. The president, J. E. Travis (Fire Chief) opened the hearing and permitted Lauber's counsel to proceed with a court reporter present. Dr. Coffey, Lauber's treating physician, was examined concerning his diagnosis of Lauber's condition, the operation he performed on Lauber for low back stabilization (spinal fusion), Lauber's stay in the hospital and treatment. He testified, "that Mr. Lauber now had a 15% disability, at the least 10%." When Dr. Coffey was asked whether he thought Lauber's fall caused the injury he stated:

". . . Mr. Lauber was in a bad mechanical position, that he was born that way and that the normal wear and tear of hard labor had aggravated the situation, however, it was the fall that finally brought him to the Doctor. . . ."

A witness named Harry Smith, who had known Lauber for several years, testified that he had never known Lauber to have a bad back until the "Barn" fire. Lauber testified in his own behalf and his wife also testified concerning the trouble Lauber was having with his back after the "Barn" fire.

Lauber said on the 27th day of February, 1963, he wrote a letter to the Chief asking for relief, and the next day the board of directors voted to pay his medical bills.

Among other things Lauber testified "he was let go" (having reference to the 15th day of July, 1963). Immediately upon Lauber having made this statement, Chief Travis countered by saying that was not so, and produced a copy of Lauber's insurance

card that said, "Mr. Lauber resigned July 15, '63." Lauber thereupon responded that when he signed the card it did not say anything about resigning. The record then discloses:

"Chief Travis and Mr. Lauber then proceeded with several accusations and counter accusations. . . . Chief Travis said Mr. Lauber received 81 days over payment. Chief Travis said that he did not see Mr. Lauber fall from the ladder, or come down. Jack Gray says he didn't see him fall and that he was heeling the ladder, and that if Mr. Lauber came down the ladder he would have had to step on him. Chief Travis said that Mr. Lauber was taken off the payroll Jan. 1, 1963."

It is to be noted Chief Travis was president and Jack Gray was a member of the board of directors of the Firemen's Relief Association. Both were present at the hearing and participated.

On the 17th day of August, 1965, Lauber's claim for additional relief for injuries and permanent disabilities was disallowed in its entirety with less than a majority of the directors voting in the negative. Lauber thereupon appealed to the district court of Saline County by filing his notice of appeal on the 2nd day of September, 1965. On the same date Lauber filed an original action against the Firemen's Relief Association of Salina in the district court upon which summons was issued. (The district court proceeded on Lauber's appeal, not on this petition.)

On the 1st day of April, 1966, the district court determined that a majority of the members of the board of directors of the Firemen's Relief Association had not acted in rejecting Lauber's claim, and thereupon ordered a vote to be taken on the claim and that not less than a majority should vote one way or the other, the court retaining jurisdiction. Thereafter on the 7th day of April, 1966, Lauber's claim was rejected by a majority of the members of the board of directors of the Firemen's Relief Association.

The Firemen's Relief Association defended Lauber's claim in the district court on the following grounds:

"1. The claim is barred by the Statute of Limitations.

"2. That the payment of the claim versus the defendant is discretionary and did not involve any fraud, malice, or intentional wrongdoing.

"3. That the defendant did provide relief for the plaintiff by virtue of certain insurance policies.

"4. That the plaintiff failed through his own negligence to collect the benefits due under the policies.

"5. That payments under the Firemen's Relief Fund are for the sole purpose of providing relief and not for paying benefits for permanent disability."

The contention that the claim was barred by the statute of limitations was raised by a motion to dismiss in the trial court. It was argued since the action was filed September 3, 1965, more than three years after December 11, 1961, the action was barred by the statute of limitations. (K. S. A. 60-512.) Lauber argued the action was filed May 25, 1964, within the three-year period, but that such suit was one in which he failed to recover "otherwise than upon the merits" by reason of the decision of the Supreme Court in the mandamus action, and that the present action, both on appeal and by suit, was commenced within six months thereafter, all as provided in K. S. A. 60-518. In due course the trial court denied the motion to dismiss, and the question is not raised on appeal.

Upon the challenge of the Firemen's Relief Association in the district court that an appeal would not lie from its decision, the district court ruled as a preliminary matter:

"There is more than abundance of authority for the conclusion that an appeal will not lie from a decision such as the one here made by the Firemen's Relief Association. This was all before the adoption of the present code of civil procedure effective January 1, 1964. K. S. A. 60-2101, has changed this matter and now provides for such appeal, and the appeal by Lauber is sustained. No procedure is provided by statute in this respect as to further action, and the Court is of the opinion the plaintiff appellant is entitled to relief only upon showing that the Firemen's Relief Association has acted arbitrarily, capriciously, unreasonably, or oppressively."

It thereupon ordered that a trial be had on the issue as to whether or not the Firemen's Relief Association acted arbitrarily, capriciously, unreasonably or oppressively in denying Lauber's claim.

After hearing the matter the trial court entered an order dated September 6, 1966, in which it found substantially in accordance with the facts heretofore recited, and in its "Findings and Order of the Court" further recited:

"As a result of the injuries suffered by Lauber on December 11, 1961, he was required to have a spinal fusion, which operation was performed by Dr. Coffey in September, 1962. All expenses of this operation and treatment were paid by Blue Cross-Blue Shield.

"Dr. Coffey testified that Lauber had a 15% disability but on cross examination stated it could be a 10%. This disability was not related by the doctor to any particular occupation and in view of the fact that Lauber was substantially employed after July 15, 1963, the refusal of relief thereafter cannot be said to be arbitrary, unreasonable, or capricious.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The court finds that Lauber was permitted to introduce all testimony he

desired. The board of the defendant conducted a full and complete hearing on all of the issues in the case. Full consideration was given to his claims. There was a valid controversy and one upon which reasonable minds might differ. The court in its equitable power finds that the failure to provide relief during the months of January, February, March, and April of 1963 was arbitrary and that the plaintiff should be paid from the relief fund the sum of $1,140.00 plus interest at 6% from April 1963. The court finds all other orders and proceedings of the Board were not unreasonable, not arbitrary, not capricious, and not oppressive, and all other claims other than the one for $1,140.00 plus interest should be denied, and it is by the court so ordered."

Lauber filed a motion for new trial which was overruled on the 3rd day of October, 1966.

Notice of appeal was duly perfected to the Supreme Court by Lauber from the order of the trial court denying him permanent partial disability. This is based upon Lauber's assertion that he sustained fifteen percent permanent partial disability as a result of the accident.

The Firemen's Relief Association cross-appealed from the order of the trial court awarding Lauber a judgment in the sum of $1,140 plus interest for the failure of the Association to provide relief during the months of January, February, March and a part of April, 1963.

Lauber, in an effort to recover fully upon his claim against the Association, contends his case should be tried in the district court in the same manner as any civil suit originally commenced therein. In his brief he relies on K. S. A. 60-2101 (a), which provides:

"A judgment rendered or final order made by a court or *any other tribunal*, board or officer *exercising* judicial or *quasi-judicial functions*, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court. If no other means for perfecting such an appeal is provided by law, it shall be sufficient for an aggrieved party to file a notice that he is *appealing from such judgment or order with such court, tribunal*, board, or officer within thirty (30) days of its entry, and then causing true copies of all pertinent proceedings before such court, *tribunal*, board or officer to be prepared and filed with the clerk of the district court of the county in which such judgment or order was entered. *The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require.* A deposit as security for costs shall be required by the clerk of the district court as in the filing of an original action. When an action is filed in the district court on appeal or removal from an inferior court the jurisdiction of the district court shall not be limited to only such matters as were within the jurisdiction of the lower

court, and the district court may by order permit the issues to be enlarged in the same manner and to the same extent as if the action had been originally commenced in the district court." (Emphasis added.)

By reason of the foregoing appeal statute Lauber argues:

"If there is a more clear or distinct manner of stating that upon any such appeal, and in this appeal, the trial in the district court is *de novo*—we cannot conceive of such. Manifestly a jury should be had, especially if requested, upon such trial *de novo*, which was denied to appellant. . . ."

It is apparent 60-2101 (*a*), *supra*, recognizes the appellate jurisdiction of district courts over inferior tribunals whether exercising "judicial" or "quasi-judicial" functions, thus expanding the language of the former appeal statute. (See G. S. 1949, 60-3301.)

It was held in *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P. 2d 29, that in the absence of statutory provisions therefor, district courts were without jurisdiction to entertain appeals from nonjudicial acts of administrative officials or boards. The provisions of 60-2101 (*a*), *supra*, adopted by the legislature since that case, expand the appellate review to final orders of such agencies if the order is the exercise of quasi-judicial authority. This includes the decisions of administrative agencies, boards or tribunals.

Lauber dwells on the sentence above emphasized in 60-2101 (*a*) for the proposition that the statute gives him a right to a trial *de novo* on appeal from an order of an administrative agency or tribunal.

We construe the emphasized sentence upon which Lauber relies to be no more than declaratory of the various situations that arise on appeal to the district court. It makes no endeavor to expand the court's jurisdiction or authority.

The last sentence in 60-2101 (*a*) directs attention to the extent of the court's jurisdiction. It says, "the district court shall not be limited to only such matters as were within the jurisdiction of the *lower court*." (Emphasis added.) Here reference to the jurisdiction of the district court is confined to matters arising from the lower courts as distinguished from tribunals, boards or officers exercising quasi-judicial functions. The language of the section, as set forth in the last sentence, limits the right to enlarge the jurisdiction of the district court, on matters brought before it pursuant to 60-2101 (*a*), *supra*, to actions involving claims which could have been "originally commenced in the district court." The application of this provision for expanded jurisdiction lies only in cases where

the district court would have had original jurisdiction in the first instance. Under 60-2101 ( *a* ), *supra*, the district court may by order expand its jurisdiction to matters over which it might have exercised jurisdiction had the action been originally started in the district court. ( See Gard, Kansas Code of Civil Procedure Annotated, § 60-2101, pp. 761 to 763. )

The provisions of K. S. A. 60-2101 ( *a* ) do not authorize the district court to consider an appeal from an administrative agency or tribunal in a trial *de novo*, nor do they enlarge the jurisdiction of the district court to review administrative matters beyond limitations heretofore imposed by the law of this state.

In *Bodine v. City of Overland Park*, 198 Kan. 371, 424 P. 2d 513, the court was confronted with a zoning regulation under K. S. A. 12-712. There the trial court misconceived the basic theory upon which the review of an administrative decision was to be conducted, and this court reversed. The opinion set forth the limitations upon the authority of the district court under the circumstances there presented to review an administrative decision.

The extent of the trial court's authority on an appeal from an administrative decision was recently before this court in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P. 2d 828. The court there held:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.

"In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." ( Syl. ¶¶ 1 and 2.)

In *Rydd v. State Board of Health*, 202 Kan. 721, 451 P. 2d 239, the court was confronted with the review of action taken by an administrative agency and said:

"It is true the appeal statute here ( 65-504) provides for trial *de novo;* however, as in *Foote*, the statute is to be construed in the light of the constitutional inhibition prescribed by the separation of powers doctrine. This means the legislature may not impose upon the judiciary the function of a trial *de novo* of action of an administrative agency in the sense of authorizing the court to substitute its judgment for that of the administrative agency in matters other than law or essentially judicial matters.

"65-504 authorizes the court to act if it finds the board's order arbitrary, unlawful or unreasonable. The issue, then, before the district court upon appeal is the reasonableness and legality of the order appealed from. . . ." (p. 729.)

The review of an administrative decision by the Firemen's Pension Board of the city of Wichita was before the court in *Timmons, Administrator v. McGaughey*, 193 Kan. 171, 392 P. 2d 835. The court there said the proceedings before the administrative board were pertinent and material on the question whether the plaintiff's application for a pension should be granted, and were competent on the question whether the board acted unreasonably, arbitrarily or oppressively under all the facts and circumstances. The court held:

"In reviewing the action of an administrative board, such as a Firemen's Pension Board of a city of the first class, the judicial function of the district court is to determine whether there was substantial evidence to provide a rational basis for the conclusion reached by the administrative board.

"Courts will not inquire into the motives which impel administrative board action for that does not affect the legality or validity of the action, except where it involves fraud, malice or intentional wrong-doing." (Syl. ¶¶ 1 and 2.)

For other decisions of like import, see *Marks v. Frantz*, 183 Kan. 47, 325 P. 2d 368; *Boehm v. Board of County Commissioners*, 194 Kan. 662, 400 P. 2d 739; and *Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261.

Lauber contends it was unnecessary for him to first file his claim with the Firemen's Relief Association because it is a private insurance corporation and subject to civil suit as such. (This he asserts as his primary contention.) He argues it is a private insurance corporation primarily because the statute creating the Firemen's Relief Fund so provides. He cites K. S. A. 40-1706 which provides that the commissioner of insurance "shall . . . pay over all of the moneys collected from such insurance companies, . . . to the treasurer of the firemen's relief association of such city, . . . to be incorporated under the laws of this state."

As his sole authority for the proposition that the Firemen's Relief Association is a private insurance corporation, Lauber cites 18 C. J. S., Corporations, § 18, pp. 394, 398, note 12, relying upon *Newcomb v. Boston Protective Department*, 151 Mass. 215, 24 N. E. 39 (1890).

The act providing for the creation of the Firemen's Relief Fund involved in this action is rather sketchy. It has been supplemented

by regulations adopted by the commissioner of insurance (Insurance Department Regulations 48-13-1 and 48-13-2) and also by a Firemen's Relief Association Handbook issued by the commissioner of insurance. The organization of a Firemen's Relief Association to be incorporated pursuant to the provisions of 40-1706, *supra,* is contained primarily in the handbook, which has not been adopted by the insurance commissioner as regulations. It provides that the Firemen's Relief Association is to be organized without capital stock as a nonprofit corporation to receive, hold, use and disperse, under direction of the Association, the funds due and to become due the Association for the benefit and relief of members of the fire department of the city, district, township, etc., pursuant to the provisions of Article 17, Chapter 40 of the Kansas Statutes Annotated.

Basically the act establishes a Firemen's Relief Fund by imposing a tax of $2 upon each $100 of premiums on all fire and lightning insurance written in Kansas within the limits of any incorporated city, and that portion of any township, county or fire district which is participating in the Firemen's Relief program. The tax is imposed on all companies writing this insurance.

The fact there may be need for additional regulations and/or legislation regarding the Firemen's Relief Fund is beside the point in the present litigation. Suffice it to say, we hold the Firemen's Relief Association of Salina to be a special corporation created by statutory authority for a public purpose. It is a nonprofit, corporate, public body whose duties are defined by statute to administer public funds which it holds in trust.

Undoubtedly, the administrative body which most nearly resembles the board of directors of the Firemen's Relief Association is the board of trustees of the Firemen's Pension Fund. (Art. 14a, ch. 13, K. S. A.) This article provides the governing bodies of the cities of the first class maintaining a fire department shall establish and maintain a pension fund for the fire department, which shall be used exclusively for the payment of pensions and disability benefits as authorized therein. The pension fund is administered by a board of trustees, as designated therein. The provisions relative to the Firemen's Pension Fund are quite similar to the provisions of the Firemen's Relief Act, except the Firemen's Relief Act does not provide who shall be the governing body of the associations created thereunder.

The statutes in both instances specify the purposes for which the funds may be used. The actual distribution of the funds in both instances is left to the administrative direction of the governing body. We see no sound basis to distinguish between the board of directors of the Firemen's Relief Association and the board of trustees of the Firemen's Pension Fund.

Three cases have been before this court involving the board of trustees of the Firemen's Pension Fund. (*Penquite v. Dunn*, 123 Kan. 528, 256 Pac. 130; *Denton v. West*, 156 Kan. 186, 131 P. 2d 886; and *Timmons, Administrator v. McGaughey*, 193 Kan. 171, 392 P. 2d 835.) In the *Timmons* case the board of trustees of the Firemen's Pension Fund was held to be an administrative body whose decisions are subject to limited review as heretofore stated.

Accordingly, we hold the Firemen's Relief Association of Salina to be a public body corporate administering public funds pursuant to legislative mandate, and its decisions are administrative in nature. Its decisions are subject to limited review just as the decisions of other administrative tribunals. (See *Board of Trustees v. Village of Glen Ellyn*, 337 Ill. App. 183, 85 N. E. 2d 473 [1949]; *O'Neal v. Trustees, Springfield Firemen's P. & R. Fund*, 10 Ohio Op. 2d 197, 160 N. E. 2d 563 [1959]; *Wallace v. Childers*, 198 Okla. 604, 180 P. 2d 1005 [1947]; and *Firemen's Pension Fund, etc., v. Minnaugh et al.*, 80 Pa. D. & C. 297 [1951].)

It follows that the trial court properly recognized Lauber's appeal from the Firemen's Relief Association, and reviewed the matter upon the correct legal theory as an appeal from an administrative decision. Lauber's independent action filed in the district court against the Firemen's Relief Association of Salina was unnecessary and ineffectual.

We are primarily concerned in this appeal with the provisions of K. S. A. 40-1707, which read in part:

"All moneys collected and received under the provisions of this act, except-ing the three percent (3%) thereof as provided in this article, shall be held in trust and used as a fund for the relief of any member of the fire department of such city, township, county or fire district when injured or physically disabled in or by reason of the discharge of his duties as such, . . . or for the fur-ther purpose of paying a pension to members of full-paid fire departments who are unfit for service after having served for a period of not less than twenty (20) years on the department, such pension not to exceed in amount one-half (½) of the monthly salary at the date of retirement, or for the purchase of insurance which would provide for any or all of the foregoing purposes for which such fund is authorized to be expended: . . ."

Inasmuch as Lauber had served the Fire Department of Salina for a period of less than ten years, he was not eligible for the payment of a pension under the provisions of the foregoing statute, and we are not here concerned with an attempt by Lauber to receive a pension under the provisions of Article 14a, Chapter 13 of the Kansas Statutes Annotated (in particular see K. S. A. 13-14a02 and 13-14a09).

Thus, we are confined to the first provision authorizing payments for the *relief of those injured or physically disabled* in or by reason of the discharge of their duties as firemen.

Nowhere has the legislature in making provision for the Firemen's Relief Fund (K. S. A. 40-1701, *et seq.*) indicated what should be paid to firemen who are injured or physically disabled in the discharge of their duties as firemen. Where a workman is injured or killed in the course of his employment in industry workmen's compensation is provided under the workmen's compensation act. There, however, the compensation to be awarded an injured workman or his dependents is spelled out in some detail. The legislature in dealing with employees' retirement systems (Art. 14a, ch. 13, K. S. A.) requires the governing body of cities of the first class, maintaining an organized police department and a fire department to establish and maintain a separate pension fund for each department to be used for the payment of pensions and disability benefits as authorized in the act. (See K. S. A. 13-14a02.) Where a fireman qualifies for benefits under this act the legislature has specified what he shall receive from the pension fund. (See K. S. A. 13-14a08 and 12-14a09.)

Here the Firemen's Relief Association contends the payment of relief to an injured or physically disabled fireman by reason of the discharge of his duties as a fireman is completely discretionary with the Association. Lauber, on the other hand, contends his right to relief is substantially equivalent to one's right in a tort action to recover damages for the negligent acts of another.

As we construe 40-1707, *supra*, neither of these extremes was contemplated by the legislature; that is, if it be assumed the expression "completely discretionary" is intended to mean the right to deny any relief whatever.

In construing 40-1707, *supra*, to determine the meaning of "relief" it is well to take into consideration other benefits made available to firemen by the legislature. The benefits provided in K. S. A.

13-14a09 are concerned with permanent disability benefits. When a fireman in the performance of his duties as a fireman is *"permanently injured or disabled"* "so as to render him unfit for the performance of his duties" as a fireman, he is eligible for permanent disability benefits under the Firemen's Pension Fund. The Firemen's Relief Act (K. S. A. 40-1707) provides that all funds shall be held in trust and used for *the relief of firemen injured or physically disabled* in the discharge of their duties.

Webster's Third New International Dictionary defines "relief" as "removal or lightening of something oppressive, burdensome, painful, dangerous, or distressing."

Courts which have dealt with the definition of "relief" in somewhat the same sense that it has been used in 40-1707, *supra*, have given the following definitions:

"Relief" means to lessen evil, pain, etc. (*D. D. D. Corporation v. Federal Trade Commission*, 125 F. 2d 679, 682 [7th Cir. 1942].)

"Relief" is a lessening of a burden, succor, comfort and ease, and complete supplanting is not connoted. (*State v. Toomey*, 135 Mont. 35, 51, 335 P. 2d 1051 [1958].)

The word "relief" is defined as the act of relieving, or state of being relieved. (*Gilbert v. Casualty Co.*, 126 W. Va. 142, 146, 27 S. E. 2d 431 [1943].)

The word "relief" in United States statutes relating to pensions, bonuses and veterans' relief means the removal in whole or in part of any evil or hardship that afflicts body or mind; especially, the partial removal of pain, grief, want, care, anxiety, toil, or anything distressing or burdensome, so that some ease is obtained. (*In re McCormick's Estate*, 169 Misc. 672, 8 N. Y. S. 2d 179, 183 [1938].)

We construe "relief" as used by the legislature in 40-1707, *supra*, to mean the removal in whole or in part of the financial burden, hardship or distress of a fireman, his widow or dependents, resulting from injury or physical disability to a fireman in the discharge of his duties. Within reasonable limits, depending on the funds available and the circumstances of financial need resulting from such injury or physical disability to a fireman, the amount of financial assistance to be paid as relief to such fireman, his widow or dependents, falls within the discretionary power of the Firemen's Relief Association to administer the fund.

It is to be noted Lauber has appealed to this court on the sole question of the trial court's refusal to grant him damages for his

claimed fifteen percent permanent partial disability sustained as a result of the accident. No appeal was taken from the order granting or denying any other relief.

Under the foregoing construction of 40-1707, *supra,* it cannot be said the trial court erred in finding the order of the Firemen's Relief Association denying Lauber's claim for fifteen percent permanent partial disability was "not unreasonable, not arbitrary, not capricious, and not oppressive," or that the trial court erred in finding there was substantial evidence to afford a rational basis for the conclusion reached by the Firemen's Relief Association in denying Lauber's claim for fifteen percent permanent partial disability.

The Firemen's Relief Association's cross appeal challenged the order of the district court awarding Lauber a judgment in the sum of $1,140 plus interest for the failure of the Association to provide relief to Lauber during the months of January, February, March and a part of April, 1963, on the ground that the Association's denial of relief to Lauber for these months was arbitrary.

By providing financial assistance to Lauber in the form of relief by paying his medical expenses and salary for the months of September, October, November and December, 1962, the Firemen's Relief Association admitted Lauber sustained injury in the "Barn" fire in the course of his employment as a fireman with the Salina Fire Department. The fact that there may have been some controversy as to whether Lauber sustained an injury at the "Barn" fire was resolved in Lauber's favor by the foregoing admission which is binding upon the Association.

Under these circumstances the evidence was sufficient to sustain the finding of the trial court that the refusal of the Firemen's Relief Association to provide relief to Lauber for the remaining months of his total temporary disability as a result of the spinal fusion—the months of January, February, March and a part of April, 1963—was arbitrary and unreasonable.

The record discloses, and the trial court without doubt noted, an air of hostility on the part of Chief Travis, chairman of the board of directors of the Firemen's Relief Association hearing Lauber's claim for relief, and gave due consideration to this circumstance. (See *Comm'rs of Leavenworth v. Brewer,* 9 Kan. 307.)

It is unfortunate a fireman who presents a claim for relief to an administrative body holding public funds in trust for his benefit

should be required to present his claim to a board presided over by one who manifests partiality against the claimant. The influence a city fire chief has over other city firemen serving on an administrative body of this character is a circumstance entitled to note. A situation of this character denigrates the requirement of a fair and impartial hearing by an administrative body committed to administer public trust funds.

Perhaps the remedy lies in legislation providing for the organization of Firemen's Relief Associations on a more suitable basis for the purpose of administering these public trust funds impartially.

One other point deserves mention. The Firemen's Relief Association defended in the trial court on the ground that it provided relief for Lauber by virtue of certain insurance policies as authorized by the statute (40-1707, *supra*), and that Lauber failed, through his own neglect, to collect the benefits due under the Maryland Casualty policy.

It may well be the funds accumulated under the legislative scheme are inadequate to administer the Firemen's Relief Fund, without the procurement of insurance to adequately provide relief for the firemen intended to benefit by the act, but Firemen's Relief Associations are governed by regulations adopted by the commissioner of insurance in the purchase of insurance. This matter is spelled out in some detail by Insurance Department Regulations 48-13-1, relative to on-duty coverage, and 48-13-2, relative to twenty-four hour coverage.

Under 40-1707, *supra*, the Firemen's Relief Association is obligated to use the money provided by the act for the relief of those injured or physically disabled in or by reason of the discharge of their duties as firemen, *or to carry insurance for this purpose.* Lauber in his brief claims he had no knowledge of the Maryland Casualty Company insurance written for his benefit until January, 1963, when it was too late to make application for the same.

Under the insurance commissioner's regulations policies of insurance purchased by the Firemen's Relief Association *must name the Firemen's Relief Association as the beneficiary of the policy, and must not contain a provision which would permit the beneficiary to be changed.* Furthermore, *all indemnities of whatsoever nature must be paid to the Firemen's Relief Association, and the policy of insurance shall so provide.*

It is readily apparent these policies of insurance are administered

by the Firemen's Relief Association as trustee for the benefit of the individual firemen.

Lauber's theory throughout the extended proceedings herein was that he is entitled to be paid the full extent of his claim by virtue of the direction in 40-1707, *supra,* to the Firemen's Relief Association that it use the funds held in trust to provide relief for firemen injured or physically disabled in or by reason of the discharge of their duties. Under his theory the fact the Firemen's Relief Association carried the policy of insurance with Maryland Casualty Company was immaterial because, according to Lauber, its only purpose was to indemnify the Association for the payments of relief it was obligated to make under the statute. Under these circumstances and upon the present state of the record, the failure of the Firemen's Relief Association to make application for the benefits under the Maryland Casualty policy of insurance for and on behalf of Lauber suggests questions we are obligated to leave open.

The trial court in the instant case entered judgment for Lauber in the sum of $1,140 as wages for the months of January, February, March and a part of April, 1963, plus interest, thereby granting relief to Lauber from funds of the Association which are primarily the obligation of the Association to award. Under the facts and circumstances presented by the record herein, however, the entry of such judgment was not prejudicial to the Association in view of the action previously taken by the Association in awarding Lauber relief by paying his wages for the months of September, October, November and December, 1962.

The Association contends that the judgment entered by the trial court included wages for one extra month for which Lauber was actually on duty and paid. This question relates to the cross appeal of the Association, and inasmuch as the Association has not made it affirmatively appear from the record the trial court erred in this respect, the Association has failed to sustain its burden on this matter.

The judgment of the lower court is affirmed.